# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALDEZ, et al., | Case No. 1:13-cv-00519-AWI-SAB |
| Plaintiffs, | ORDER DENYING PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| THE NEIL JONES FOOD COMPANY, et al., | (ECF Nos. 42, 44, 45) |
| Defendants. | |

Currently before the Court is the joint motion of Plaintiffs Luis Valdez and Carolina Martinez and Defendant Neil Jones Food Company ("Defendant Jones") for preliminary approval of the class action settlement. The parties are seeking preliminary approval of the settlement agreement, certification of the class for purposes of settlement only, appointment of Plaintiffs Luis Valdez and Carolina Martinez as class representatives, appointment of class counsel, appointment of a settlement administrator, approval of the form and content of the Notice of Pendency and Proposed Settlement of Class Action Settlement and Hearing on Final Approval, and to schedule a final approval hearing.

The Court heard oral arguments on July 30, 2014.  (ECF No. 46.)  Counsel Dennis Wilson appeared telephonically for Plaintiffs Valdez and Martinez, and Counsel Michael Wilbur appeared for Defendant Jones.  Id.  Having considered the moving papers, the declarations and

1

exhibits attached thereto, arguments presented at the July 30, 2014 hearing, as well as the Court's file, the Court issues the following order.

# I.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Valdez and Martinez reside in Fresno County and were employed as non-exempt hourly employees by Defendant Jones. (First Am. Compl. ¶¶ 8, 28, ECF No. 31.) Defendant Jones operates San Benito Foods which is a product line producing a wide variety of products such as chopped and crushed tomatoes, pasta sauces, diced and stewed tomatoes, purees, pizza sauces, peeled tomatoes, and seafood cocktail sauces. (Id. at ¶ 29.) Defendant Jones' has canning and packing facilities in Firebaugh and Hollister, California. (Id. at ¶¶ 9, 29.)

Plaintiff Martinez is still employed by Defendant Jones and works in the unskilled position of a hand processor or general laborer. (Id. at ¶¶ 39, 63.) Plaintiff Valdez was employed as a skilled mechanic who handled and worked with machinery. (Id. at ¶¶ 39, 63.) He was terminated on or about October 28, 2011. (Id. at ¶ 82.) Both Plaintiffs were laid off from the Firebaugh facility. (Id. at ¶ 40.)

Plaintiffs Valdez and Martinez filed this employment action on behalf of themselves and all others similar situated in the Superior Court of the State of California for the County of Fresno on January 11, 2013, alleging violations of California law. (Compl. 9-33,[1] ECF No. 1.) Defendant Jones removed this action to the Eastern District of California on April 9, 2013, under 28 U.S.C. §§ 1332, 1441, and 1446 on the basis of diversity jurisdiction. (Notice of Removal 1-2, ECF No. 1.)

On May 9, 2013, Plaintiffs filed a motion to remand. (ECF No. 8.) Plaintiffs' motion to remand was denied on September 11, 2013. (ECF No. 28.) On October 21, 2013, Plaintiffs filed a first amended complaint which alleged failure to provide meal and rest breaks, failure to pay overtime, failure to pay required "reporting time", failure to pay for all hours worked, failure to pay wages due upon termination, failure to provide itemized wage statements, unfair business

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1 practices, conversion, and violation of the Private Attorneys General Act. (ECF No. 31.)

2 Defendant Jones filed an answer to the complaint on November 27, 2013. (ECF No. 37.) On May 7, 2014, Plaintiffs filed a notice of class action settlement. (ECF No. 40.) Plaintiff filed a notice of joint motion for preliminary approval of the class action settlement on June 23, 2014. (ECF No. 42.) On June 24, 2014, the parties filed the instant joint motion for preliminary approval of the class action settlement. (ECF No. 44.) Plaintiffs filed a statement of errata on July 29, 2014. (ECF No. 45.)

## II.

## TERMS OF SETTLEMENT AGREEMENT

The settlement provides that Plaintiffs and the class consisting of any and all persons who were employed by Defendant Jones in an hourly position anywhere within the State of California at any time from January 11, 2009 through May 10, 2014 will share in a maximum potential settlement of $850,000 (the "gross settlement amount"). This includes the costs of settlement administration, as well as the employer's share of payroll taxes on individual settlement payments, and all amounts awarded by the Court to class counsel for attorneys' fees and costs and as enhancement awards to Plaintiffs Martinez and Valdez.

The individual settlement payments to each class member who submits timely and valid claims will be based on their "workweek equivalents" during the class period of January 11, 2009 through May 10, 2014. Each class member's "workweek equivalents" will be calculated by dividing the class member's total straight time work hours during the class period by forty hours. Each class member who submits a timely claim form will be entitled to a proportionate share of the net settlement amount that is the same as that class member's proportionate share of the total workweek equivalents for the entire class. Each workweek equivalent will be compensated at 1/159,487.28 of the net settlement amount.

Notices shall be mailed to all class members at the last known address provided by Defendant Jones and shall contain the workweek equivalents for that class member. Any notices that are returned after having been mailed will be re-sent if there is a notice of forwarding address. If there is no notice of forwarding address, the claims administrator will be deemed to

have satisfied its obligation to provide notice and the class member will remain a member of the settlement and will be bound by the terms of the agreement.

The net settlement amount is the amount remaining after the following items are deducted from the gross settlement amount: (1) the employer's share of payroll taxes on individual settlement payments; (2) enhancement awards to Plaintiffs Valdez and Martinez in compensation for their services as class representatives in an amount not to exceed $10,000 each, as approved by the Court; (3) a class counsel fee payment of $280,500 (33% of the gross settlement amount) to class counsel in compensation for their services to the class, subject to Court approval; (4) class counsel litigation expenses ("costs") of not more than $30,000 to class counsel in reimbursement to class counsel of their expenses incurred in prosecuting this action, as approved by the Court; and (5) the settlement administrator's reasonable fees and expenses in administering the settlement of approximately $26,500.

The settlement provides that if the net settlement amount exceeds the sum of the individual payments, seventy-five percent of the difference will revert to and be retained by Defendant and twenty-five percent will be distributed on an equal basis to each Class Member who submits a valid claim. All individual settlement payment checks that are uncashed 90 days after they are mailed by the settlement administrator shall be returned to Defendant Jones. Plaintiffs and the class will seek dismissal of all claims against Defendant and will provide Defendant with a full release of the settled claims. The class members will release all claims asserted in this action with prejudice.

## III.

## LEGAL STANDARD

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

In order to depart from the usual rule that litigation is conducted by individually named parties, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2550 (2011). Rule 23(a) provides that the named plaintiffs are appropriate representatives where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b) requires a plaintiff to meet one of the following requirements: (1) prosecuting individual actions would create a risk of prejudice to members not a party to the action; (2) injunctive or declaratory relief is appropriate for the class as a whole; or (3) common questions of law or fact predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013). The class representatives have an incentive to advance their own interests over that of the class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiffs regarding settlement. Stanton v. Boeing Co., 327 F.3d 938, 959-60 (9th Cir. 2003). Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

///

///

# IV.

# ANALYSIS

Plaintiffs seek to certify a class "consisting of any and all persons who were employed by Neil Jones in an hourly position anywhere within the State of California at any time from January 11, 2009 through May 10, 2014." (Joint Memorandum in Support of Joint Motion for Preliminary Class Approval of Class Action Settlement 5, ECF No. 44-1.) The Court finds that Plaintiffs' motion is not sufficient to certify a class and, additionally, the settlement itself is not fair, reasonable, and adequate to all concerned for the reasons discussed herein.

### A.   Class Certification

Even where the certification of the class is unopposed the court must examine whether the settlement class satisfies Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. Hanlon, 150 F.3d at 1019. The court is required to pay " 'undiluted, even heightened attention' to class certification requirements in a settlement context." Id. at 1019 (quoting Amchem Products, Inc. v. Windsor ("Amchem"), 521 U.S. 591, 620 (1997)).). The dominant concern of Rule 23(a) and (b) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives. Amchem, 521 U.S. at 621.

In order for the class representatives to fairly and adequately protect the interests of the class, the class representative must possess the same interest and suffer the same injuries as the class members. Amchem, 521 U.S. at 625-26. Where there are diverse groups and individuals that would require subclasses to be established, the court cannot approve a settlement due to the consent of the members of a single class. Id. at 627.

"[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart, 131 S.Ct. at 2552 (citations omitted). In deciding whether to certify the class, it may be necessary for the court to probe behind the pleadings and examine the merits of the plaintiff's underlying claim. Comcast v. Behrend, 133 S.Ct. 1426, 1432 (2013); Wal-Mart, 131 S.Ct. at 2551.

///

1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A variety of factors have been found to be relevant to the whether joinder of the class members would be impracticable, including "(1) the number of individual class members; (2) the ease of identifying and contacting class members; (3) the geographical spread of class members; and (4) the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant." Arredondo v. Delano Farms Co., __ F.R.D. __, 2014 WL 710945, at *7 (E.D. Cal. Feb. 21, 2014) (citations omitted). Class members being located outside of one district increases the impracticality of joinder and, if the class is large, the size alone can be dispositive. Wright, 259 F.R.D. at 472. However, classes of fairly modest size are inclined to be certified. Id.

Plaintiffs submit a motion for certification stating that there are approximately 3,873 employees in the class, however, they present no evidence to support this assertion. The burden is on the moving party to show that the requirements of Rule 23 are met; and the moving party can do this by producing affidavits, documents or testimony establishing each Rule 23 requirement. Andrews Farms v. Calcot, Ltd., No. 1:07-cv-00464-LJO-DLB, 2009 WL 1211374, at *3 (E.D. Cal. May 1, 2009). Plaintiff must make a prima facie showing to support the requirements under Rule 23 and arguments in Plaintiffs' brief are insufficient to meet the requirement. "More than a 'naked assertion' or 'mere allegation' of class numerousness is required, though the exact number of class members is not necessary." WILLIAM B. RUBENSTEIN, Newberg on Class Actions § 24:17 (4th ed.).

2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). The key inquiry is "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " Arredondo, 2014 WL 710945, at *7 (quoting Wal-Mart, 131 S.Ct. at 2551).

Commonality is not required for all of the claims. It is sufficient if there is one single

7

1 issue common to the proposed class. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010). Plaintiffs argue that the Class shares common legal questions: whether Defendants violated multiple California Labor Code provisions, including the requirement to pay overtime and provide meal and rest periods, proper wage statements, and payment of all wages on termination.

> To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class. Fed.R.Civ.P. 23(a)(2). The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). However, it is insufficient to merely allege any common question, for example, "Were Plaintiffs passed over for promotion?" See Wal–Mart, 131 S.Ct. at 2551–52. Instead, they must pose a question that "will produce a common answer to the crucial question why was I disfavored." Id. at 2552; see also id. at 2551 ("What matters to class certification is not the raising of common 'questions' ... but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (internal citation, alteration, and quotation marks omitted)). In other words, Plaintiffs must have a common question that will connect many individual [employment] decisions to their claim for class relief.

Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

Plaintiffs' common question posed here is insufficient under Wal-Mart to meet the commonality requirement. Wal-Mart, 131 S. Ct. 2541 at 2551 ("Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification.") "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' " Id. at 2551.

Here, Plaintiff Valdez was a mechanic who handled and worked with machinery and was classified as a skilled worker. Plaintiff Martinez is a hand processor or general laborer and is classified as an unskilled worker. Plaintiffs seek to represent all non-exempt employees that worked for Defendant Jones in California during the class period. However, Defendant Jones has multiple facilities in the State and it appears that this action includes individuals who were employed in California outside of the facilities identified in the complaint. Plaintiffs have not shown that their jobs and duties were similar to the unnamed class members that they seek to represent. The Court is not persuaded that there are not dissimilarities within the proposed class

1  that could impede the generation of common answers. Wal-Mart, 131 S.Ct. at 2551. Plaintiffs'
2  allegations are insufficient to establish commonality under Rule 23(a). See Lusby v. Gamestop,
3  Inc., 297 F.R.D. 400, 410-11 (N.D. Cal. 2013).

4      3.    <u>Adequacy</u>

5  The named plaintiffs must fairly and adequately protect the interests of the class.
6  Fed.R.Civ.P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the
7  class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have
8  any conflicts of interest with other class members and (2) will the named plaintiffs and their
9  counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.
10 "Adequate representation depends on, among other factors, an absence of antagonism between
11 representatives and absentees, and a sharing of interest between representatives and absentees.
12 Ellis, 657 F.3d at 985 (citations omitted).

13 The Court does question whether the named plaintiffs can fairly protect the interests of
14 the Class due to the enhancement payment they are seeking in comparison to what the unnamed
15 class members will be able to receive. The named plaintiffs are receiving substantial
16 compensation ($10,000.00) to dismiss this lawsuit while it appears the unnamed class members
17 will receive very little compensation for their injury.

18 According to the settlement agreement, each class member will be entitled to an award
19 based upon the number of workweek equivalents they worked during the relevant time period.[2]
20 Based on the size of the class alleged in the joint motion for preliminary approval and the net
21 settlement fund, each employee who submits a claim form will receive approximately $3.00 for
22 every work week equivalent they worked during the claim period.. There are 278 weeks
23 between January 11,2009 and May 10, 2014. If an employee worked forty hours every week
24 during this period, the maximum compensation he could receive under the settlement agreement
25 is $834.00. Since overtime, vacation, sick leave, holidays, and all other time off is not counted
26 in determining an employee's work week equivalent, it is unlikely that any class member would

---

[2] A workweek equivalent will be the total number of hours the employee worked divided by forty hours. Each workweek equivalent is compensated at 1/159,487.28 of the net settlement amount. (Addendum to Stipulation of Settlement ¶ 3, ECF No. 44-3 at 61.)

receive this amount of compensation. The unnamed class members are unlikely to receive anywhere near the $10,000.00 that Plaintiffs are seeking for their enhancement payment. Excessive payments to the named representatives can be an indication that the agreement is not fair to the unnamed class members. Stanton, 327 F.3d at 976.

### 4. Predominance and Superiority

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs contend that the central inquiries here are whether Defendant violated certain provisions of the California Labor Code and these common questions present a significant aspect of the case. However, Plaintiffs must do more than make vague references to violations of the Labor Code. Even where Plaintiffs are contending there was a companywide policy resulting in failure to pay all wages due, courts must consider where the individual employees spent their time and whether they were performing similar duties. Lusby, 297 F.R.D. at 413.

Similarly, while Plaintiffs argue that permitting plaintiffs to pool together meets the superiority requirement where there are multiple claims for relatively small amounts, it is not clear that this is the case here. Although Plaintiffs state that the claims at issue here are for relatively small amounts, based upon the allegations considered in deciding the motion to remand, at least some of the class members here could have claims totally more than $50,000.00 in damages. While the Court is not making a finding that a class action is not the superior vehicle in which to litigate these claims, Plaintiffs have failed to meet the predominance and superiority requirements of Rule 23(b)(3).

### B. Settlement Agreement

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. Review of the proposed settlement of the parties proceeds in two phases. True, 749 F.Supp.2d at 1062. At the preliminary approval stage, the court determines whether the proposed agreement

is within the range of possible approval and whether or not notice should be sent to class members. Id. at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 FSupp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

1. Notice

Initially, the Court finds that the settlement agreement is not designed to provide adequate notice to the unnamed class members who will be releasing all claims asserted in this

---

[3] Since there is no government participant in this action, this factor does not weigh in the Court's analysis.

11

1 action with prejudice. Rule 23 requires that notice for any class certified under Rule 23(b)(3)
2 must be "the best notice that is practicable under the circumstances, including individual notice
3 to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(b)(2)(B).

4 The unnamed class members here are agricultural workers, and as discussed during the
5 July 30 hearing, the class includes migrant workers and those who are transient. The settlement
6 agreement provides that notice will be mailed to the class members based upon the defendants'
7 last known address. There is no requirement that any attempt be made to find out current
8 addresses of the class members or to provide for any other method of notifying the absent class
9 members.

10 The class in this action is comprised of workers at Defendants' California facilities from
11 January 11, 2009 through May 10, 2014. The parties have not provided any information as to the
12 percent of the unnamed class members that are current employees of Defendant Jones. However,
13 it would appear that many of the unnamed Class members would no longer be employed by
14 Defendant. Further, if any class member has moved more than six months prior to the notice
15 being mailed, a forwarding address for mail would have expired. Pursuant to the agreement of
16 the parties, the notice requirement is satisfied even where mail is returned without a forwarding
17 address.

18 Additionally, the class is comprised of a number of individuals for whom English is not
19 their primary language, yet there is no requirement that the notice be provided in Spanish. To
20 the extent that a notice was received by an unnamed class member, it is not sufficient notice if
21 the Class member is unable to understand the notice.

22 Overall the agreement seems to provide that the class will be dismissing their claims with
23 prejudice without providing a significant number of the class notice based on mailing to the last
24 known address. <u>Kakani v. Oracle Corp.</u>, 2007 WL 1793774, at *10 (N.D. Cal. 2007). While this
25 undoubtedly benefits Defendant Jones, especially given the large reversionary provision of the
26 settlement agreement, Plaintiffs are to be concerned with protecting the interests of the unnamed
27 class members. The Court finds that the notice provisions in the settlement agreement do not
28 satisfy the notice requirement of Rule 23.

1      2.     <u>Opt-out and Objection Period</u>

The Court is also concerned about the length of time provided by the agreement for the class members to submit their claim form, opt-out, or file an objection. The notices to class members are to be mailed out by September 8, 2014. The class members are to submit claim forms, opt-out forms or objections within 45 days of mailing or by October 23, 2014. However, the Court finds that this does not leave sufficient time for any claim forms that are returned to be re-mailed and the Class member to receive and respond to the notice prior to the deadline established. Nor does the proposed settlement agreement provide sufficient time for the unnamed class members to make a fully informed decision on whether to participate in this action, to opt-out, or to object to the settlement.

Should Plaintiffs renew the motion for preliminary approval of the class action settlement, they should provide at least sixty days for class members to submit their claim forms, opt-out or object to the settlement. <u>See</u> <u>Lusby</u>, 297 F.R.D. at 414.

3.     <u>Fairness to all class members</u>

All of the employees working for Defendant Jones are not paid the same hourly rate. (<u>See</u> Strom Decl. ¶¶ 2, 3, ECF No. 14.) The settlement provides that all employees will be paid the same amount for each workweek equivalent. Therefore, the Court is concerned that the settlement provides preferential treatment to some employees.

Further, the agreement extinguishes all claims alleged in this complaint, but does not break the class into subgroups. It is not apparent that all employees were subjected to the same violations of state law. For example, the complaint alleges that employees were not paid wages due when they were terminated. While many of the employees may be seasonal or no longer working for Defendants, it appears there would be a group of individuals who are permanently employed and still working for Defendant Jones. These employees would not be subject the failure to pay wages due upon termination, but would receive the same damages per workweek as the employees who were not paid when they were terminated.

The Court finds that Plaintiffs have not demonstrated that the settlement does not provide preferential treatment to some class members.

#### 4. Claims Release

The Court also has concerns regarding the scope of the claims that are released due to the settlement agreement. The settlement agreement provides that:

> "Released Claims" means any and all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, known or unknown, in law or in equity, whether or not concealed or hidden, that have been asserted or that might have been asserted by the Named Plaintiffs or by either of them or by any Class Member, arising during the period from and including January 11, 2009 through the Preliminary Approval Date, for unpaid wages or other compensation allegedly owed, or for damages, penalties, interest, liquidated damages, attorney's fees, or costs or any other recovery, including, but not limited to, claims based on alleged violations of any state or federal statutes, rules, or regulations relating to the payment of wages, rest breaks, meal periods, maximum working hours, overtime, or hours worked, and specifically including all claims and allegations raised in the Action to the effect that Neil Jones: (1) failed to provide meal periods; (2) failed to provide rest breaks; (3) failed to pay overtime; (4) failed to pay reporting time; (5) failed to pay for all hours worked; (6) failed to pay all wages due to separated employees in a timely manner; (7) failed to provide accurate wage statements; (8) committed unfair, fraudulent, or unlawful business practices in violation of Business & Professions Code § 17200 et seq.; (9) withheld or converted compensation, property, or anything of value that belonged to any Class Member; (10) violated any provision of the California Labor Code for which penalties are or may be recoverable under the California Labor Code Private Attorneys General Act ("PAGA") or for which penalties are or may be recoverable under any other statute or legal authority; (11) failed to pay split shift premiums; (12) engaged in impermissible timekeeping practices including "rounding" of clock times; or to any other effect.

(Stipulation of Settlement 5, ECF No. 44-3.) Upon final approval of the settlement, the class members will be forever barred from pursuing any of the Released Claims against Defendant Jones. (Id. at 17-18.)

The scope of the released claims exceeds those claims that were raised in the complaint. For example, the class is releasing any claim that Defendant Jones withheld or converted any property that belongs to a class member. There are no allegations in the first amended complaint to raise such a claim. While the named class members may waive any potential claims against Defendant Jones, the Court finds that the scope of the released claims for the unnamed class members is unacceptably broad.

#### 5. Other concerns

"[C]oncerns about the fairness of settlement agreements 'warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a

1 disproportionate distribution of the settlement....' " Stanton, 327 F.3d at 953 (quoting Hanlon, 2 150 F.3d at 1026). There are three settlement arrangements that the Ninth Circuit has recognized 3 may improperly favor counsel at the expense of the class action plaintiffs. Laguna v. Coverall 4 North America, Inc., 753 F.3d 918, * (9th Cir. 2014). "These are (1) when counsel receive a 5 disproportionate distribution of the settlement, or when the class receives no monetary 6 distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' 7 arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; 8 and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added 9 to the class fund." Laguna, 753 F.3d at * (quoting In re Bluetooth Headset Prods. Liab. Litig., 10 654 F.3d 935, 947 (9th Cir.2011)). The Court finds that these factors are present in this 11 settlement agreement.

12     **a.**    **Reversionary Agreement**

13 The settlement provides for $850,000.00 as a gross settlement amount. Plaintiffs' 14 counsel is requesting $280,500.00 in attorney fees and up to $30,000.00 in costs. The named 15 class representatives are requesting $10,000.00 each ($20,000.00 total). The claims 16 administrator will receive $26,500.00. Defendants' portion of payroll taxes will also come from 17 the gross settlement amount. If these amounts are approved it will result in a net settlement 18 amount of $493,000.00 (less Defendant's portion of the payroll taxes).

19 As discussed above, the agreement does not provide the best notice that is practicable 20 under the circumstances, and the Court is concerned that it will not provide individual notice to 21 all members who can be identified through reasonable effort. Pursuant to the agreement, 22 Defendants shall receive seventy-five percent of any unclaimed funds. Additionally, the 23 agreement provides that any uncashed claim checks revert back to defendant, providing that less 24 than twenty five percent of the net settlement fund could actually be distributed after any 25 uncashed checks revert back. The Court finds this scenario troubling when considering the 26 fairness of the settlement agreement to the class.

27     **b.**    **Attorney Fees**

28 Class counsel is requesting thirty three percent, or $280,500.00 in attorney fees. While

1 Plaintiffs contend that the settlement agreement provides substantial relief to the class, the net
2 settlement fund that is proposed to be available to the class is less than $493,000.00.  Class
3 counsel is seeking $280,500.00 in attorney fees, and based upon the number of class members,
4 the fund provides $125.00 for each class member.

5 After this case was removed from state court, Plaintiff filed a motion to remand.  In
6 deciding the motion to remand, the Court considered the damages alleged by Plaintiff Valdez.
7 The Court found that, based on the documentation submitted, Plaintiff Valdez was seeking
8 between $66,964.00 and $75,294.50 in damages for lost wages alone.  (ECF No. 27 at 12.)
9 Plaintiff Valdez only worked for Defendant Jones for approximately eighteen months from
10 January 11, 2009 through May 10, 2014, the time period that is applicable to the class.  Given the
11 limited time period that Plaintiff Valdez worked for Defendant Jones, it can be assumed that
12 other unnamed class members would have claims with similar or higher damages.

13 The amount of the net settlement fund in this action will result in the unnamed class
14 members receiving pennies on the dollar for their potential claims.  The Court considers the
15 potential damages of the unnamed class members and the actual recovery received for the
16 purpose of evaluating the attorney fee request only.

17 Further, the way the settlement is structured, any unawarded attorney fees will become
18 part of the net settlement fund and likely will revert to the defendant.  Given that the class
19 representatives would each be receiving significant compensation beyond that available to the
20 unnamed class members, counsel would be receiving substantial attorney fees, and Defendant
21 may receive more than seventy five percent of the net settlement fund due to the reversionary
22 clause, the Court finds this raises at least an inference that the settlement may improperly favor
23 counsel and the named representatives at the expense of the unnamed class action plaintiffs.

24      6.    <u>Range of possible approval</u>

25 "To determine whether a settlement falls within the range of possible approval, a court
26 must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery
27 balanced against the value of the settlement offer."  <u>Lusby</u>, 297 F.R.D. at 415 (quoting <u>In re</u>
28 <u>Tableware Antitrust Litig.</u>, 484 F.Supp.2d at 1080).

While Plaintiffs argue that the settlement provides substantial relief to the class and is fair, the Court finds that 1) the notice provisions are inadequate to comply with due process and inform the unnamed class members of the rights that are being extinguished due to the settlement; 2) the agreement may provide preferential treatment to some class members; 3) class counsel attorney fees raises at least an inference that the settlement may improperly favor counsel; 4) the agreement may result in over seventy-five percent of the net settlement fund reverting to Defendant; and 5) the incentive payments to the named Plaintiffs far exceed the recovery of the individual class members. For these reasons, the structure of the settlement agreement raises concerns about the fairness of this agreement to the unnamed class members. The Court finds that the settlement is not within the range of possible approval.[4]

## V.

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that the motion for preliminary approval of the class action settlement is DENIED. The parties are advised that any future proposed settlement needs to address whether adequate notice can be provided to the unnamed class members and must demonstrate that the settlement is fair, reasonable and adequate to the unnamed class members.

IT IS SO ORDERED.

Dated: __August 11, 2014__

UNITED STATES MAGISTRATE JUDGE

---

[4] Counsel are advised that if the class certification and notice issues are corrected, it may resolve some of the other issues identified. However, in reviewing the agreement as a whole, the Court must feel confident that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon v. Chrysler Corp., 150 F.3d at 1027. With that in mind, the Court does consider the amount of attorney fees and the named plaintiffs' enhancement payment in relation to the net settlement amount and what the individual unnamed class members will receive under the agreement.