# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALDEZ, et al., | Case No. 1:13-cv-00519-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BE DENIED |
| v. | |
| THE NEIL JONES FOOD COMPANY, et al., | (ECF No. 48) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On December 23, 2014, Plaintiffs Luis Valdez and Carolina Martinez, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a second motion for preliminary approval of a class action settlement. (ECF No. 48.) Plaintiffs' motion is unopposed.

The motion was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b). The hearing on Plaintiffs' motion took place on January 21, 2015. Counsel Brandon Sweeney appeared telephonically on behalf of Plaintiffs and Counsel Michael Eugene Wilbur personally appeared on behalf of Defendant Neil Jones Food Co. ("Defendant Jones").

For the reasons set forth below, the Court recommends that the motion for preliminary approval be denied.

1

# I.

# BACKGROUND

### A. Allegations in the First Amended Complaint

The operative complaint in this action is the first amended complaint filed on October 21, 2013. Plaintiffs filed the first amended complaint against Defendant Jones alleging failure to provide meal and rest breaks, failure to pay overtime, failure to pay required "reporting time", failure to pay for all hours worked, failure to pay wages due upon termination, failure to provide itemized wage statements, unfair business practices, conversion, and violation of the Private Attorneys General Act. (ECF No. 31.)

Plaintiffs reside in Fresno County and were employed as non-exempt hourly employees by Defendant Jones. (First Am. Compl. ¶¶ 8, 28, ECF No. 31.) Defendant Jones operates San Benito Foods which is a product line producing a wide variety of products such as chopped and crushed tomatoes, pasta sauces, diced and stewed tomatoes, purees, pizza sauces, peeled tomatoes, and seafood cocktail sauces. (Id. at ¶ 29.) Defendant Jones' has canning and packing facilities in Firebaugh and Hollister, California. (Id. at ¶¶ 9, 29.)

At the time the complaint was filed Plaintiff Martinez was still employed by Defendant Jones and worked in the unskilled position of a hand processor or general laborer. (Id. at ¶¶ 39, 63.) Plaintiff Valdez was employed as a skilled mechanic who handled and worked with machinery. (Id. at ¶¶ 39, 63.) He was terminated on or about October 28, 2011. (Id. at ¶ 82.) Both Plaintiffs were laid off from the Firebaugh facility. (Id. at ¶ 40.)

### B. Procedural History

Plaintiffs Valdez and Martinez filed this employment action on behalf of themselves and all others similar situated in the Superior Court of the State of California for the County of Fresno on January 11, 2013, alleging violations of California law. (Compl. 9-33,[1] ECF No. 1.) Defendant Jones removed this action to the Eastern District of California on April 9, 2013, under 28 U.S.C. §§ 1332, 1441, and 1446 on the basis of diversity jurisdiction. (Notice of Removal 1-2,

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

ECF No. 1.)

On May 9, 2013, Plaintiffs filed a motion to remand. (ECF No. 8.) Plaintiffs' motion to remand was denied on September 11, 2013. (ECF No. 28.) On October 21, 2013, Plaintiffs filed the first amended complaint. (ECF No. 31.) Defendant Jones filed an answer to the complaint on November 27, 2013. (ECF No. 37.)

On May 7, 2014, Plaintiffs filed a notice of class action settlement. (ECF No. 40.) Plaintiffs filed a notice of joint motion for preliminary approval of the class action settlement on June 23, 2014. (ECF No. 42.) On June 24, 2014, the parties filed a joint motion for preliminary approval of the class action settlement. (ECF No. 44.) A hearing on the motion was held on July 30, 2014 and an order issued on August 12, 2014, denying the motion for preliminary approval of the class action settlement finding that Plaintiffs had not met the requirements for class certification and that the structure of the settlement agreement raised concerns about the fairness of the agreement to the unnamed class members. The Court cited several areas of concern: 1) the notice provisions were inadequate to comply with due process and inform the unnamed class members of the rights that are being extinguished due to the settlement; 2) the agreement may have provide preferential treatment to some class members; 3) class counsel attorney fees raised at least an inference that the settlement may improperly favor counsel; 4) the agreement may result in over seventy-five percent of the net settlement fund reverting to Defendant; and 5) the incentive payments to the named Plaintiffs far exceeded the recovery of the individual class members. (ECF No. 47.)

On December 23, 2014, Plaintiffs filed a second motion for preliminary approval of a class action settlement. (AR 48.)

**C.  Terms of the Proposed Settlement Agreement**

Under the terms of the proposed settlement, Defendant agrees to pay $850,000.00 in cash ("gross settlement amount") to resolve the claims of any class members who do not timely and validly opt out. The parties propose the following deductions from the gross settlement amount:

- Up to $5,000.00 each to Plaintiffs Martinez and Valdez for their services and participation as class representatives;

3

- Up to $238,000.00 (28 percent of the gross settlement fund) to class counsel for attorney fees;
- Up to $30,000.00 in legal costs and expenses;
- $40,215.64 in claims administrator costs;[2] and
- Defendant's portion of FICA, FUTA, and all other state and federal payroll taxes.

The parties seek to approve a single class for the purposes of settlement only consisting of any and all persons who were employed by Defendant Jones in an hourly position anywhere within the State of California at any time from January 11, 2009 through May 10, 2014. Defendant Jones only employs hourly employees at two processing facilities in California. Therefore, the settlement agreement only covers employees at the Holliser (San Benito facility) and Firebaugh (Toma-tek facility) facilities.

The individual settlement payments to each class member who submits timely and valid claims will be based on their "workweek equivalents" during the class period of January 11, 2009 through May 10, 2014. Each class member's "workweek equivalents" will be calculated by dividing the class member's total straight time work hours during the class period by forty hours. Each class member who submits a timely claim form will be entitled to a proportionate share of the net settlement amount that is the same as that class member's proportionate share of the total workweek equivalents for the entire class. Each workweek equivalent will be compensated at 1/159,487.28 of the net settlement amount.

Notices shall be mailed to all class members at the last known address provided by Defendant Jones. The settlement administrator will resend notices returned by the United States Postal Service with a forwarding address. If no forwarding address is provided, the claims administrator will skip trace the individual names to obtain additional addresses and will mail a second notice to any new or different address obtained. A postcard reminder will be sent to any class member who has not responded to the notice fifteen days before the claim filing/opt-out deadline.

---

[2] In the original motion for preliminary approval of class action settlement the claims administrator costs were estimated at $26,500.00.

4

The settlement provides that if the net settlement amount exceeds the sum of the individual payments, seventy-five percent of the difference will revert to and be retained by Defendant and twenty-five percent will be distributed on an equal basis to each Class Member who submits a valid claim. All funds from individual settlement payment checks that are uncashed 90 days after they are mailed by the settlement administrator shall be returned to Defendant Jones. Plaintiffs and the class will seek dismissal of all claims against Defendant and will provide Defendant with a full release of the settled claims. The class members will release all claims asserted in this action with prejudice.

## II.

## LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members. In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011). To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946).

Review of the proposed settlement of the parties proceeds in two phases. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749

F.Supp.2d at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

### III.

### CLASS CERTIFICATION

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

In order to depart from the usual rule that litigation is conducted by individually named parties, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Wal-Mart Stores, Inc. v. Dukes (Wal-Mart), __ U.S. __, 131 S.Ct. 2541, 2550 (2011). Rule 23(a) provides that the named plaintiffs are appropriate representatives where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements ensure that the class claims are limited to those fairly encompassed by the named plaintiff's claims. Wal-Mart, 131 S.Ct. at 2550.

Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure

23(b)(3), which requires a demonstration that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the Court notes:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart, 131 S. Ct. at 2551 (italics in original).

At the January 21, 2015 hearing, the parties argued that Wal-Mart does not apply where a class is being certified for the purposes of settlement only. The Court finds this to be unpersuasive for several reasons. First, the issue of whether a class exists determines whether the action can proceed. If the class cannot meet the requirements of Rule 23 then settlement of the class action would be deemed to be invalid. In order to settle the action, a class must exist.

Second, it is clear that the parties stipulation that the class should be certified is not sufficient. The Supreme Court has advised courts that the specifications of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997). Sections (a) and (b) of Rule 23 focus the court's attention on whether the proposed class has sufficient unity so the absent class members can fairly be bound by the decisions of the class representatives. Amchem Products, Inc., 521 U.S. at 621. The federal court does not have the authority to determine that the settlement is fair, and therefore, certification is proper without Rule 23(a) requirements being met. Id. at 622. However, the Court is aware that "approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled."

7

Ogbuehi v. Comcast, __ F.R.D. ___, 2014 WL 4961109, at *2 (E.D. Cal. October 2, 2014) (quoting Newberg On Class Actions § 11:28 (4th ed.)).

### 1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties have identified 3,867 class members. (Decl. of William Strom ¶ 4, ECF No 48-3.) The number of individual class members in this instance far exceeds the number that have been found to be so numerous that joinder of all members would be impracticable. See Sullivan v. Chase Inv. Services of Boston, 79 F.R.D. 246, 257 (N.D. Cal. 1978) ("a class of 1000 clearly satisfies the numerosity requirement"). The class as a whole which exceeds 3,800 members satisfies the numerosity requirement.

Here, the parties are seeking certification of a single class and the Court questions whether the interests of the different groups requires division into subclasses. See Amchem Products, Inc., 521 U.S. at 626. The proposed class worked at two different locations and involve two separate groups of employees. Additionally, as discussed below, not all employees were subject to the same alleged violations. The parties in this action seek a global settlement without assurance of fair and adequate representation for the diverse groups or individuals represented. Amchem Products, Inc., 521 U.S. at 627.

### 2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. 2014) (quoting Abdullah v. U.S. Sec. Assocs., 731 F.3d 952, 957 (9th Cir. 2013)). Commonality is not required for all of the claims. It is sufficient if there is one single issue common to the proposed class. True , 749 F.Supp.2d at 1064.

Plaintiff contends that commonality exists as the class shares common legal questions such as whether Defendant violated California Labor Code by failing to pay overtime, failing to provide meal and rest periods; failing to provide proper wage statements; and failing to pay all

8

wages on termination. (ECF No. 48-1 at 18.) These are the same questions that the Court previously found insufficient to establish commonality in the class. To satisfy the requirement that there be commonality, Plaintiff's must do more than show that class members "have all suffered a violation of the same provision of law." <u>Wal-Mart</u>, 131 S.Ct. at 2551.

As stated in this Court's prior order:

> To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class. Fed.R.Civ.P. 23(a)(2). The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). However, it is insufficient to merely allege any common question, for example, "Were Plaintiffs passed over for promotion?" <u>See Wal–Mart</u>, 131 S.Ct. at 2551–52. Instead, they must pose a question that "will produce a common answer to the crucial question why was I disfavored." <u>Id.</u> at 2552; <u>see also id.</u> at 2551 ("What matters to class certification is not the raising of common 'questions' ... but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (internal citation, alteration, and quotation marks omitted)). In other words, Plaintiffs must have a common question that will connect many individual [employment] decisions to their claim for class relief.
> <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir. 2011).
>
> Plaintiffs' common question posed here is insufficient under <u>Wal-Mart</u> to meet the commonality requirement. <u>Wal-Mart</u>, 131 S. Ct. 2541 at 2551 ("Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification.") "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" <u>Id.</u> at 2551.

(ECF No. 47 at 8:6-19.)

Here, Plaintiffs have merely alleged a common question without connecting a company wide policy to the claim for relief. Cf. <u>Nen Thio v. Genji, LLC</u>, 14 F.Supp.3d 1324, 1339 (N.D. Cal. 2014) (finding questions on the illegality of the defendant's meal break policy, lack of a written meal break policy, and misclassification of team leaders as exempt employees sufficient to allege commonality). This is further demonstrated by reviewing the evidence submitted in support of the instant motion.

**Failure to pay overtime**

Plaintiff Valdez testified that on three occasions he was not paid for overtime hours that he worked. (ECF No. 48-1 at 20.) Plaintiff Martinez testified that she has never worked more than eight hours and not been paid overtime. (ECF No. 48-2 at 27-28.)

1  **Failure to provide meal periods**

2  Although Plaintiff Valdez alleges that he did not receive full thirty minute lunch breaks,
3  he testified that this was due to his not hearing the lunch break called or failing to take his break.
4  There are no allegations that the companies policy was for employees to work through their
5  breaks. (ECF No. 48-2 at 16-18.) On the contrary, Plaintiff Valdez understood that he was
6  required to take his breaks. (ECF No. 48-2 at 17.) When he reported that he was not taking his
7  lunch breaks he was told that he had to make time to take his lunch. (Id.) Plaintiff contends that
8  Defendants knew he could not just go to lunch because he was the only mechanic, (Id. at 18) but
9  even if that was so it does not establish commonality for the class as a whole.

10  Plaintiff Martinez testified that for a period of time she was told to take a twenty minute
11  rather than a thirty minute lunch break. (ECF No. 48-2 at 26.) While this claim may prove to be
12  sufficient to establish commonality with those employees working under the same conditions for
13  this time period at the Firebaugh facility, the motion for preliminary approval does not raise this
14  question.

15  **Failure to provide rest periods**

16  Similarly, Plaintiff Valdez was informed that he was required to take 12 minute rest
17  breaks. (ECF No. 48-2 at 18.) Plaintiff Martinez testified that she was told to take 2 20 minute
18  and 1 10 minute break or 2 10 minute and 1 20 minute break depending on the number of hours
19  she was working. (ECF No. 48-2 at 26.) On occasions she did receive her break late if a machine
20  was broken down. (Id. at 26.)

21  Plaintiffs' claims for failure to provide proper wage statements and failure to pay all
22  wages on termination appear to be derivative claims based upon employment violations alleged in
23  the complaint.

24  During the January 21, 2015 hearing, Defendant's counsel argued their position that there
25  is no commonality and Plaintiffs are unable to make such a showing, but this is not required at the
26  settlement phase citing Armstrong v. Board of School Directors of City of Milwaukee, 616 F.2d
27  305, 314 (7th Cir. 1980). Unlike this action, Armstrong was not a precertification settlement. In
28  Armstrong objectors to the settlement were challenging the district court's approval of the

10

1   settlement in a civil rights action. While <u>Armstrong</u> cites the two step process used in approving

2   a class action settlement, <u>id.</u> at 314, the issue was whether the settlement required a more

3   stringent review because the court had already found civil rights violations, <u>id.</u> at 316. Nothing in

4   the holding of <u>Armstrong</u> supports Defendants position that the Court need not find commonality

5   where the parties agree to settle a class action.

6   Further, Defendant argued that if the <u>Wal-Mart</u> standard is applied in the context of

7   settlement no class action would be able to settle prior to class certification. However, if that

8   were so, a defendant would be able to dispose of valid employee claims where there is no

9   common injury by settling with a single employee with unique injuries. This is clearly not

10  intended by Rule 23. Even in the settlement context there must be commonality for the

11  certification of the class to be appropriate. That being said, the Court is not finding that Plaintiffs

12  must **prove** commonality to certify the class. The issue here is that Plaintiffs have not shown that

13  the unnamed class members have suffered a common injury, that there is a common question that

14  would generate common answers apt to drive the resolution of the litigation, and the designated

15  class appears to be over broad since the parties have not included subclasses.

16  At the precertification settlement stage, there is no party contesting class certification,

17  therefore, the Court must ensure that the rights of the putative class members are protected. This

18  includes a sufficient inquiry to determine that there is commonality within the class. In this

19  instance, Plaintiffs have merely alleged a common violation of the law without showing a

20  common contention of such a nature that it is capable of classwide resolution which means that

21  resolving the truth or falsity will resolve an issue that is central to the validity of each one of the

22  claims in one stroke. <u>Wal-Mart</u>, 131 S.Ct. at 2551. The Court finds that Plaintiffs have not

23  shown that class treatment will generate common answers apt to drive the resolution of the

24  litigation, and therefore the requirement of commonality has not been met.

25      3.    <u>Typicality</u>

26  To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical

27  of the class. Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the

28  same or similar injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct.' " Hanon, 976 F.2d at 508. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Id. The requirements of commonality and typicality often merge. Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014). Both typicality and commonality are guideposts to determine whether "under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. (quoting Wal-Mart, 131 S. Ct. at 2551 n.5).

Here, the named Plaintiffs' claims do not appear to be typical of the class. The deposition testimony submitted in support of preliminary approval of the settlement show that Defendant had a rest break and lunch break policy. Plaintiff Valdez' claim does not involve a policy, but he alleges that Defendant would be aware that he was unable to take his lunch break because he was the only mechanic. Plaintiff Valdez' claim that he could not go to lunch because he was the only mechanic would be unique to him and not suitable for class resolution.

Plaintiff Martinez testified that she received late rest breaks on occasion when a machine was broken down. Although Plaintiff Valdez states that he was not paid overtime on three occasions, Plaintiff Martinez stated she never worked overtime and was not paid. These facts do not indicate that the unnamed class members have injuries similar to those of the named Plaintiffs or that similar injuries resulted from the same conduct by Defendant.

Plaintiffs have not demonstrated that their claims are typical of the unnamed classmembers.

4. <u>Adequacy</u>

The named plaintiffs must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

"Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis, 657 F.3d at 985 (citations omitted).

"A class representative must be part of the class and possess the same interest and injury as the class members." Amchem Products, Inc., 521 U.S. at 626 (internal punctuation and citations omitted.) Based upon the information that has been provided in support of the motion, the Court is not convinced that Plaintiff Valdez and Martinez are adequate representatives of the class. Where the named class members have not suffered the same injury as the class members their interest is not coextensive with that of the class. Since Plaintiffs have not shown that they share a common injury with the unnamed class members their interests in this action appears to conflict with the unnamed members of the class.

5. Rule 23(b)

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry is similar to Rule 23(a)'s commonality requirement, but is more demanding. Ogbuehi, 2014 WL 4961109 at *5.

"The notion that the adjudication of common issues will help achieve judicial economy is an integral part of the predominance test." In re Wells Fargo Home Mortgage Overtime Pay Litig. ("In re Wells Fargo"), 571 F.3d 953, 958 (9th Cir. 2009) (internal punctuation and citations omitted). The predominance inquiry "focuses on the relationship between the common and individual issues" to determine if "there is clear justification for handing the dispute on a representative rather than on an individual basis" without considering the benefits of the settlement. Hanlon, 150 F.3d at 1022.

Plaintiffs argue that the predominance prong has been met as the class members are all hourly employees at Defendants facilities subject to a collective bargaining agreement. However, Plaintiffs must do more than offer vague references to the collective bargaining agreement. Lusby v. Gamestop, Inc., 297 F.R.D. 400, 412 (N.D. Cal. 2013). Regardless of existence of

collective bargaining agreements, the Court must still make determinations as to whether the individual's injury was due to the terms of the agreement. In re Wells Fargo, 571 F.3d at 959. Plaintiffs have not shown that there are common questions, the answer to which will drive this litigation, the Court finds that the requirements of Rule 23(b) have not been met.

For these reasons, the Court recommends that the request to conditionally certify a settlement class be denied.

## III.

## PROPOSED SETTLEMENT AGREEMENT

The Court shall briefly address those remaining concerns with the settlement itself. Aside from those issues regarding the adequacy of the named plaintiffs to represent the class, the Court is somewhat uneasy that the settlement as a whole is not fair, reasonable, and adequate to the class.

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013). The class representatives have an incentive to advance their own interests over that of the class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiffs regarding settlement. Stanton v. Boeing Co., 327 F.3d 938, 959-60 (9th Cir. 2003). Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

Rule 23(c)(2)(B) requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." This does not require actual notice and notice by mail is

sufficient to satisfy due process if it is reasonably calculated to apprise the interested parties of the pendency of the action and affords them an opportunity to object. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 452 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

In the initial motion for preliminary approval, the parties only provided for notice to be mailed to the last known address of the employee which was to be provided to the settlement administrator by Defendant.  The Court found that this was not sufficient to meet the notice requirement of Rule 23.  (ECF No. 47 at 12.)  The revised agreement now requires the settlement administrator to do a skip trace for any mail that is returned without a forwarding address and mail a notice to any newly discovered address.  Requiring the settlement administrator to take steps to find current addresses for the absent class members and remail notice to the address discovered by the skip trace does remedy the concern in the August 12, 2014 order.

While the current agreement addresses the deficiencies in the prior agreement's notice provision, due to the type of work, Defendant's employees are seasonal workers.  Defendant has provided a declaration from the Director of Human Resources stating that a large number of their employees return season after season and forty-six percent of the proposed class members were active employees during the 2014 season.  (Decl. of William Strom ¶ 6, ECF No. 48-3.)  This does mean that over half of the proposed class members have not worked for Defendant for a year or longer so there still exists the concern that the addresses provided by Defendant will not be current.  Defendant contends that many of the past employees have family members who work for the company which will provide for a reasonable communication network, and the skip trace by the settlement administrator appears to be reasonable to address this concern.  However, the Court contemplates that there could be a number of class members who may not receive notice of this class action due to having moved and the settlement administrator not finding a valid current address.  However, at the preliminary approval stage this arrangement would be accepted by the Court subject to final review of the court's concern at the final fairness hearing.

The parties have negotiated a gross settlement amount of $850,000.00.  The terms of the settlement agreement provide that class counsel will receive $268,000.00 in attorney fees, costs,

1  and expenses; and the class representatives will each receive $5,000.00 as an incentive award.
2  Based upon the Court's calculations, after deducting the payment administration costs, the net
3  settlement fund will be approximately $531,785.00.  This provides for $3.33 to compensate each
4  pay period equivalent, which includes Defendant's share of the payroll taxes.  Seventy five
5  percent of any undistributed funds will revert to Defendant.  Further, rather than escheating to the
6  State, any uncashed settlement checks will revert to Defendant.

7  Looking at the settlement as a whole raises the appearance that the parties may have agree
8  upon an inflated settlement fund, knowing that a large number of the classmembers will not
9  receive notice or submit claim forms, in order for class counsel to receive substantial attorney
10 fees with Defendant not significantly at risk of actually incurring the obligation to pay the
11 majority of the net settlement fund.  This appearance could potentially be ameliorated by the
12 parties agreeing to have the funds prorated to all class members submitting claims, having the
13 unclaimed funds distributed to a cypres beneficiary, or by having class counsel receive a fee
14 linked to the actual benefit received by the class.

15 Finally, on January 7, 2015, class counsel filed similar actions in state court on behalf of
16 two potential class members.  These actions were filed after the named parties in this action had
17 submitted the motion for preliminary approval of the settlement that is alleged to be fair,
18 reasonable and adequate to the unnamed class members.  That two members of the potential class
19 have already found that the settlement is not adequate to compensate them for their injuries
20 corroborates the Court's concern that the settlement proposed here is not fair, reasonable, and
21 adequate.

## IV.

## CONCLUSION AND RECOMMENDATION

24 The Court finds that Plaintiff has not demonstrated that conditional class certification
25 under Rule 23(a) and (b)(3) or preliminary approval of the class action settlement is warranted.

26 Accordingly, IT IS HEREBY RECOMMENDED that Plaintiffs' motion for certification
27 of a class and preliminary approval of the class settlement be DENIED.

28 These findings and recommendations are submitted to the district judge assigned to this

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 26, 2015**

UNITED STATES MAGISTRATE JUDGE