# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALDEZ, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE NEIL JONES FOOD COMPANY, et al.,<br><br>    Defendants. | Case No.  1:13-cv-00519-AWI-SAB<br><br>ORDER REQUIRING ADDITIONAL BRIEFING RE FAIRNESS OF CLASS ACTION SETTLEMENT<br><br>(ECF Nos. 58-62, 63) |

On November 2, 2015, the Magistrate Judge issued findings and recommendations which recommended granting the parties motion to certify the class and for preliminary approval of the class action settlement. The findings and recommendations was served on the parties and contained notice that any objections to the findings and recommendations were to be filed within fourteen days (14) from the date of service. The period for filing objections has passed and no objections have been filed.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a de novo review of this case.

In denying Plaintiff's second motion for preliminary approval, the Court indicated its concern regarding the substantial possible reversion. Doc. 54 at 3. The Court noted that there was a realistic probability that much of the net settlement fund would go unclaimed. Doc 54 at 3; *see*

1

Doc. 51 at 16. The settlement appeared structured to (1) cast as wide a net as possible in releasing claims of the putative class members, (2) minimize Defendant's likely payout by creating a potential reversion and a claims process that serves little purpose, and (3) maximize the attorney's fees to class counsel by tying fees to the total settlement fund value even though that figure is an unrealistic projection of the actual benefit to the class. The Court was concerned that the settlement agreement displayed the subtle signs that counsel have allowed pursuit of self-interest to infect the negotiations, warned of in *In re Bluetooth,* 654 F.3d 935, 947 (9th Cir. 2011) Namely, counsel would receive a disproportionate distribution of the settlement; the parties negotiated a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and the parties created a substantial possible reversion of unclaimed fees to the defendant. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir.2015) (quoting *In Re Bluetooth*, 654 F.3d at 947). In order to remedy these deficiencies, the Magistrate Judge and this Court suggested that the parties agree upon a pro rata distribution of unclaimed funds, have unclaimed funds go to a cy pres beneficiary, or have Class Counsel's fee be linked to the actual benefit to the class.

The amended settlement agreement has narrowed the scope of the release by class members to the claims actually at issue in this action. *See* Doc. 58-1 at 15. The Court is satisfied with the scope of the release.

Next, the amended settlement agreement has modified the notice packet to provide notice in English and Spanish and to allow the class members 60 days – rather than 45 – to submit claims. *See* Doc. 58-1 at 14. The parties have also agreed to use a skip trace to notice any class members whose initial notice packet is returned as undeliverable. Notice is adequate.

Although the parties have come closer to an agreement that the Court would approve, the Court still has three overlapping concerns that may prevent preliminary approval: the reversion, the claims process, and that the attorney fee request in this claims-made settlement is based on the maximum settlement amount. Remedying of any one of these items would likely result in approval of a settlement in this action.

The amended settlement agreement has modified the reversion from its prior form. Rather

than up to 75% of the net settlement fund reverting directly to Defendant, up to 75% of the funds will revert to Defendant to be used toward at least one of the following projects: to pave Defendant's employee parking lot, to provide lighting for its employee parking lot, to add an additional building to its Firebaugh facility that would improve distribution of paychecks, to install an electronic message board at the Firebaugh facility, or to install kiosks with computer terminals in the Firebaugh plant which would "give employees greater access to information including company policies[,] rules[,] … [and] benefits." Doc. 58-1 at 11. As the Magistrate Judge correctly noted, "the funds will revert back to Defendant and the improvements will confer a substantial benefit on Defendant. This is not a cy pres distribution of the unclaimed funds, but a reversion to Defendant." The Court remains concerned about the potential reversion.

Next, the Court has concerns the agreed claims process. The established claims process would require putative class members to submit a claim form[1] and an IRS W-4 form. Many of Defendant's present employees are members of the putative class. *See* Declaration of William Strom at ¶ 6, Doc. 48-3; Doc. 58-1 at 19-20. Even in light of that fact, the parties have established a claims process that applies equally to present and former employees. The claims process appears to serve no legitimate purpose for present employees. So far as the Court can tell, Defendant already possesses all of the information necessary to process the payments for present-employee class-member claims. In this situation, the claims process appears unnecessary. *Millan v. Cascade Water Serv's, Inc.*, --- F.R.D. ----, 2015 WL 5916750, *11 (E.D. Cal. Oct. 8, 2015) (quoting, *inter alia*, *De Leon v. Bank of Am.*, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012); Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges*, at 30 (3d ed. 2010); *see Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 391 (C.D. Cal. 2007) (questioning the need for a claims-made procedure where the Defendants had all of the information needed to verify the claim eligibility and amount for class members). Eliminating that claims process would ensure that a larger portion of the net settlement fund will actually be dispersed to class members.

---

[1] The claim form solicits information only if the information provided to the putative class member is incorrect; if the name, address, telephone number, and social security number listed on the claim form are accurate, the Plaintiff need not update any of those items.

As for the former employee class members, the parties have not explained why a claims process is necessary and it is not readily apparent from the record. The parties are invited to explain the need for this process in this situation.

Finally, the Court has serious concerns regarding the requested attorney fee amount. In light of the possible substantial reversion and claims made structure, the gross settlement amount is not a figure that is representative of the actual benefit conferred on putative class members. *See Lemus v. H&R Block Enterprises LLC*, 2012 WL 3638550, *7 (N.D. Cal. Aug. 22, 2012). Although claims made settlement claim rates vary, "in a reversionary common fund or a claims-made settlement, the defendant is likely to bear only a fraction of the liability to which it agrees." *In re TJX Cos. Retail Sec. Breach Litg.*, 584 F.Supp.2d 395, 405 (D.Mass. 2008). In fact, the claim rates in claims made settlements "regularly yield response rates of 10 percent or less." *Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52. Assuming that the agreement was enforced exactly as agreed, the net settlement amount would be approximately $516,784.36, less "Defendant's portion of FICA, FUTA, and all other state and federal payroll taxes on the individual settlement payments." Doc. 63 at 4; Doc. 58-1 at 8-9. Class Counsel's requested fee award is up to 28 percent of the gross fund, $238,000.00. *See also In re Online DVD-Rental*, 779 F.3d 934, 949 (9th Cir. 2015) (It is appropriate to calculate attorney fees using the lodestar method or as a percentage of a common settlement fund; "in this circuit, the benchmark percentage is 25%.")[2] If, as the Court expects, the claims rate is below about forty percent, the attorney fee compensation amount would exceed the actual benefit conferred upon the class. *See In re Bluetooth*, 654 F.3d at 948. Such a fee award is further indicia of collusion. Rather than award such an amount, the Court would defer payment of attorney fees until after the 180 day period for cashing of settlement checks had passed to determine "the benefits actually delivered." *See Manual for Complex Litigation*, §21.71 (4th ed. 2004). The Court would then calculate Counsel's fee using the lodestar method with a percentage cross-check against the amount

---

[2] The rationale behind awarding attorney fees as a percentage of a common settlement fund is to provide contribution to class counsel to arrive at the best outcome possible for the class. That objective is largely frustrated when fund from which the fee award is taken is not an accurate measure of the actual benefit to the class.

1  actually distributed. If the present settlement agreement is approved, the attorney fee award for
2  Class Counsel will account for any low claims rate. *See Lemus*, 212 WL 3638550 at *7 (awarding
3  the lodestar amount cross-checked against the actual class member payout in a reversionary
4  common fund settlement); *see also In re Toys R Us*, 295 F.R.D. 438 457-458 (C.D. Cal. 2014)
5  (comparing the requested attorney fee award against the actual benefit to class members based on
6  likely claims rate in determining whether the fee award was so disproportionate as to suggest
7  collusion).

8  The agreement appears to favor the named parties and their counsel over the interests of
9  the class. This Court will not approve a settlement where 75 percent of the fund set aside for the
10 class could (and likely would) revert to the Defendant but Class Counsel is awarded a fee amount
11 above the benchmark and in excess of the benefit actually conferred upon the class. If the Court
12 preliminarily approves the present agreement, finding it falls within the scope of possible
13 approval, it will only be with the understanding that Class Counsel will not receive fees that
14 exceed the amount actually paid to class members.[3] As such a change could dramatically impact
15 Class Counsel's position, the Court will not preliminarily approve the settlement on that basis
16 without first having heard from counsel. The Court will afford Plaintiff, Defendant, or the parties
17 jointly an opportunity to submit additional briefing addressing the issues identified herein. Any
18 such briefing must be submitted within fourteen days of the date of this Order.

23 ///
24 ///
25 ///

---

[3] Because the requested fee award only sets the upper limit, a lesser award is consistent with the terms of the settlement. However, remedying the reversion or the claims process would require the parties to renegotiate the settlement.

If the parties elect not to file additional briefing, the Court will deny the motion for class certification because it appears, on the record before the Court, that the self-interest of the named parties and their representatives, rather than the class's interests, substantially influenced this settlement. *See Allen v. Bedolla*, 787 F.3d at 1224-1225; *In re Bluetooth*, 654 F.3d at 948-949.

Accordingly, IT IS HEREBY ORDERED that:

1. The parties are authorized to submit additional briefing as outlined above within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated:  December 3, 2015

SENIOR DISTRICT JUDGE