# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LUIS VALDEZ, et al.,

Plaintiffs,

v.

THE NEIL JONES FOOD COMPANY, et al.,

Defendants.

Case No. 1:13-cv-00519-AWI-SAB

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(ECF No. 71)

On February 19, 2016, Plaintiffs Luis Valdez and Carolina Martinez, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a fourth motion for preliminary approval of a class action settlement. (ECF No. 71.) Plaintiffs' motion is unopposed.[1]

Oral argument on the motion was held on April 6, 2016. Counsel Dennis Wilson appeared telephonically on behalf of Plaintiffs and Counsel Michael Wilbur appeared telephonically on behalf of Defendant Neil Jones Food Co. ("Defendant Jones"). Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the April 6, 2016 hearing, as well as the Court's file, the Court issues the following order.

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (ECF Nos. 73, 74.)

## I.

## BACKGROUND

### A. Allegations in the First Amended Complaint

The operative complaint in this action is the first amended complaint filed on October 21, 2013. Plaintiffs filed the first amended complaint against Defendant Jones alleging failure to provide meal and rest breaks, failure to pay overtime, failure to pay required "reporting time", failure to pay for all hours worked, failure to pay wages due upon termination, failure to provide itemized wage statements, unfair business practices, conversion, and violation of the Private Attorneys General Act. (ECF No. 31.)

Plaintiffs reside in Fresno County and were employed as non-exempt hourly employees by Defendant Jones. (First Am. Compl. ¶¶ 8, 28, ECF No. 31.) Defendant Jones operates San Benito Foods which is a product line producing a wide variety of products such as chopped and crushed tomatoes, pasta sauces, diced and stewed tomatoes, purees, pizza sauces, peeled tomatoes, and seafood cocktail sauces. (Id. at ¶ 29.) Defendant Jones' has canning and packing facilities in Firebaugh and Hollister, California. (Id. at ¶¶ 9, 29.)

At the time the complaint was filed, Plaintiff Martinez was still employed by Defendant Jones and worked in the unskilled position of a hand processor or general laborer. (Id. at ¶¶ 39, 63.) Plaintiff Valdez was employed as a skilled mechanic who handled and worked with machinery. (Id. at ¶¶ 39, 63.) He was terminated on or about October 28, 2011. (Id. at ¶ 82.) Both Plaintiffs were laid off from the Firebaugh facility. (Id. at ¶ 40.)

### B. Procedural History

Plaintiffs Valdez and Martinez filed this employment action on behalf of themselves and all others similar situated in the Superior Court of the State of California for the County of Fresno on January 11, 2013, alleging violations of California law. (Compl. 9-33,[2] ECF No. 1.) Defendant Jones removed this action to the Eastern District of California on April 9, 2013, under 28 U.S.C. §§ 1332, 1441, and 1446 on the basis of diversity jurisdiction. (Notice of Removal 1-2,

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

ECF No. 1.)

On May 9, 2013, Plaintiffs filed a motion to remand. (ECF No. 8.) Plaintiffs' motion to remand was denied on September 11, 2013. (ECF No. 28.) On October 21, 2013, Plaintiffs filed the first amended complaint. (ECF No. 31.) Defendant Jones filed an answer to the complaint on November 27, 2013. (ECF No. 37.)

On May 7, 2014, Plaintiffs filed a notice of class action settlement. (ECF No. 40.) Plaintiffs filed a notice of joint motion for preliminary approval of the class action settlement on June 23, 2014. (ECF No. 42.) On June 24, 2014, the parties filed a joint motion for preliminary approval of the class action settlement. (ECF No. 44.) A hearing on the motion was held on July 30, 2014 and an order issued on August 12, 2014, denying the motion for preliminary approval of the class action settlement finding that Plaintiffs had not met the requirements for class certification and that the structure of the settlement agreement raised concerns about the fairness of the agreement to the unnamed class members. The Court cited several areas of concern: 1) the notice provisions were inadequate to comply with due process and inform the unnamed class members of the rights that are being extinguished due to the settlement; 2) the agreement may have provide preferential treatment to some class members; 3) class counsel attorney fees raised at least an inference that the settlement may improperly favor counsel; 4) the agreement may result in over seventy-five percent of the net settlement fund reverting to Defendant; and 5) the incentive payments to the named Plaintiffs far exceeded the recovery of the individual class members. (ECF No. 47.)

On December 23, 2014, Plaintiffs filed a second motion for preliminary approval of a class action settlement. (AR 48.) A hearing on the motion was held on January 21, 2015, and findings and recommendations issued recommending that preliminary approval of the class action settlement be denied as Plaintiffs had not demonstrated that the requirements of Rule 23(b) had been met; and the Court found the settlement was not fair, adequate, and reasonable. (ECF No. 51.) The parties filed objections to the findings and recommendations on February 9, 2015. (ECF Nos. 52, 53.) On March 27, 2015, the district judge issued an order adopting the findings and recommendations and denying the motion for preliminary approval of the settlement. (ECF

No. 54.)

On October 9, 2015, Plaintiff filed a third motion for preliminary approval of the class action settlement. (ECF Nos. 58-60.) On October 27, 2015, Defendant filed a declaration in support of the motion for approval of the class action settlement. On November 2, 2015, findings and recommendations issued recommending that preliminary approval of the class action settlement be granted, however concerns were raised regarding the enhancement payment to the class representatives, the attorney fees sought by class counsel, and the reversion to Defendant. (ECF No. 63.) On December 3, 2015, the district judge ordered additional briefing to address three areas of concern: the reversion, the claims process, and the attorney fee request. (ECF No. 64.) On December 17, 2015, the parties each filed briefing in support of the preliminary settlement agreement. (ECF Nos. 65, 66.) On December 24, 2015, the district court issued an order denying preliminary approval of the class action settlement. (ECF No. 67.)

On February 19, 2016, Plaintiff filed a fourth motion for preliminary approval of the class action settlement. (ECF No. 70.) The motion is unopposed. The parties have now consented to the jurisdiction of a United States Magistrate judge. In addressing the instant motion, the Court will address the previous findings of District Judge Ishii.

**C. Terms of the Proposed Settlement Agreement**

The parties have addressed the Court's concern regarding preferential treatment of some employees by seeking approval of two subclasses. Subclass A is composed of any and all persons who were employed by Neil Jones in an hourly union-represented position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through May 10, 2014. Luis Valdez and Carolina Martinez seek to be class representatives of this subclass. Subclass B is composed of all any and all persons who were employed by Neil Jones in an hourly union-represented position or hourly non-union position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through December 31, 2014, but excluding anyone whose employment never ended during the class period by reason of a layoff. Carolina Martinez seeks to be class representative for this subclass.

Under the terms of the proposed settlement, Defendant agrees to pay $850,000.00 in cash

("gross settlement amount") to resolve the claims of any class members who do not timely and validly opt out. Of the gross settlement amount, $650,000.00 is allocated to the released claims of settlement class A and $200,000.00 is allocated to the released claims of settlement Class B. The parties propose the following deductions from the gross settlement amount:

- Service payments of $5,000.00 each to Plaintiffs Martinez and Valdez for their services and participation as class representatives;
- Up to $212,500.00 (25 percent of the gross settlement fund) to class counsel for attorney fees;[3]
- Up to $30,000.00 in legal costs and expenses;
- $40,215.64 in claims administrator costs;
- $15,000.00 for civil penalties under the California Private Attorney General Act; and
- Defendant's portion of FICA, FUTA, and all other state and federal payroll taxes on the individual settlement payments.

The individual settlement payments to each class member in subclass A will be based on their "workweek equivalents" during the class period. Each class member's "workweek equivalents" will be calculated by dividing the class member's total straight time work hours during the class period by forty hours for the class period of January 11, 2009 through May 10, 2014. Each class member will be entitled to a proportionate share of the net settlement amount that is the same as that class member's proportionate share of the total workweek equivalents for the entire class.

The individual settlement payments to each class member in subclass B will be calculated using a formula based on the number of years during the class period that the employee was laid off. Each employee in settlement class B will receive a payment of $50 if laid off for one year during the class period; $75 if laid off for two years during the class period; $100 if laid off for three years during the class period; $125 if laid off for four years during the class period; $150 if laid off for five years during the class period; or $175 if laid off for six years during the class

3 Plaintiff's motion states the total fees sought are $238,000.00, however this appears to be a typographically error as 25% of the settlement is $212,500.00.

period. If the settlement funds are not sufficient to make the payments as described, each class member's payment will be reduced by an equal amount as necessary to ensure that all class members receive payment.

Notices in English and Spanish shall be mailed to all class members at the last known address provided by Defendant Jones. The settlement administrator will resend notices returned by the United States Postal Service with a forwarding address. If no forwarding address is provided, the claims administrator will skip trace the individual names to obtain additional addresses and will mail a second notice to any new or different address obtained.

Payment shall be made to each class member for which notice is not returned to the settlement claims administrator. Any class member who does not receive class notice due to mail being returned may file a claim form to be included in the class.

The settlement provides that if the net settlement amount exceeds the sum of the individual payments will be donated to the Firebaugh-Las Deltas Unified School District. All funds from individual settlement payment checks that are uncashed 90 days after they are mailed by the settlement administrator shall be donated to the Firebaugh-Las Deltas Unified School District.

The class A settlement resolves claims from January 11, 2009 through May 10, 2014 related to (1) Defendant's alleged failure to provide meal periods or failure to comply with any provision of California law relating to the provision of meal periods; (2) Defendant's alleged failure to provide rest breaks or failure to comply with any provision of California law relating to the provision of rest breaks; (3) Defendant's alleged failure to pay regular wages or overtime premiums for all hours worked as a result of its practices of rounding employees' clock times, requiring employees to submit to bag checks and other security checks, and the donning and doffing of protective clothing and equipment, as well as the time spent by employees walking between their work area and the employee parking lot at the beginning and end of each shift and the time spent by employees waiting to pick up paychecks; and (4) Defendant's alleged failure to provide itemized wage statements in compliance with Labor Code section 226.

The class B settlement only resolves claims arising out of Defendant's alleged failure at

any time from January 11, 2009 through December 31, 2014 to pay any member of the class all wages due within the appropriate time after layoff in violation of Labor Code section 201, 202, or 203, and any claims during the same period for alleged violation of Labor Code section 226 based on or arising out of the itemized wage statements that Neil Jones provided to laid off employees. Plaintiffs and the class will seek dismissal of all claims against Defendant and will provide Defendant with a full release of the settled claims. The class members will release all claims asserted in this action with prejudice.

**II.**

**LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS**

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members. In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011). To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946).

Review of the proposed settlement of the parties proceeds in two phases. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F.Supp.2d at 1063. "If the proposed settlement appears to be the product of serious, informed,

non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

**III.**

**CLASS CERTIFICATION**

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

In order to depart from the usual rule that litigation is conducted by individually named parties, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Wal-Mart Stores, Inc. v. Dukes (Wal-Mart), __ U.S. __, 131 S.Ct. 2541, 2550 (2011). Rule 23(a) provides that the named plaintiffs are appropriate representatives where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements ensure that the class claims are limited to those fairly encompassed by the named plaintiff's claims. Wal-Mart, 131 S.Ct. at 2550.

Additionally, Plaintiffs seek certification of a class under Federal Rule of Civil Procedure 23(b)(3), which requires a demonstration that questions of law or fact common to class members

predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Finally, the Court notes:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," [citation] and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, [citation]."

Wal-Mart, 131 S. Ct. at 2551 (italics in original).

The Supreme Court has advised courts that the specifications of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997). Sections (a) and (b) of Rule 23 focus the court's attention on whether the proposed class has sufficient unity so the absent class members can fairly be bound by the decisions of the class representatives. Amchem Products, Inc., 521 U.S. at 621. The federal court does not have the authority to determine that the settlement is fair, and therefore, certification is proper without Rule 23(a) requirements being met. Id. at 622. However, the Court is aware that "approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled." Ogbuehi v. Comcast, 303 F.R.D. 337, 344 (E.D. Cal. 2014) (quoting Newberg On Class Actions § 11:28 (4th ed.)).

1. Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Subclass A consists of at least 2,500 present or former employees who qualify for "work week equivalents" as the term is defined in the stipulated settlement agreement. (Decl. of William Strom ¶ 5, ECF No. 62.) Subclass B

consists of at least 2,300 employees who were laid off for one or more years during the settlement period. (Id.) The number of individual class members in this instance far exceeds the number that have been found to be so numerous that joinder of all members would be impracticable. See Sullivan v. Chase Inv. Services of Boston, 79 F.R.D. 246, 257 (N.D. Cal. 1978) ("a class of 1000 clearly satisfies the numerosity requirement"). Each subclass satisfies the numerosity requirement.

2. Commonality

The commonality requirement is satisfied where "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether class treatment will 'generate common answers apt to drive the resolution of the litigation.' " Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. 2014) (quoting Abdullah v. U.S. Sec. Assocs., 731 F.3d 952, 957 (9th Cir. 2013)). Commonality is not required for all of the claims. It is sufficient if there is one single issue common to the proposed class. True , 749 F.Supp.2d at 1064. To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class. Fed. R. Civ. P. 23(a)(2). The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs contend that the members of subclass A were subject to the same common terms and conditions of employment and working conditions - meal periods, rest periods, hours worked issues, and itemized wages- as the members of the class at the Firebaugh facility. The Court finds that Plaintiffs in subclass A have raised a common question regarding whether the policies and practices of Defendant failed to compensate the class members for all hours worked.

Plaintiffs allege that Defendant did not promptly pay members of subclass B when they were laid off at the end of the season. Plaintiffs have raised a common question as to whether Defendant had a practice of not timely issuing final paychecks that would violate California law.

Plaintiff has raised common questions that are of such a nature that they are capable of classwide resolution for both subclasses A and B. Accordingly, the commonality requirement has

been met.

3. Typicality

To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " Hanon, 976 F.2d at 508. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Id. The requirements of commonality and typicality often merge. Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014).

Plaintiffs allege that the members of each subclass are subjected to the same policies and practices of Defendant in regard to compensation for hours worked and payment of wages after they were laid off such that the claims asserted by the class representatives would be typical for the unnamed class members. The Court finds that Plaintiffs have satisfied the typicality requirement.

4. Adequacy

The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Ellis, 657 F.3d at 985 (citations omitted).

Nothing in the papers presented to the Court suggests that the class representatives have any conflicts of interest with any of the other class members. As Plaintiffs claims appear to be aligned with those of the class there is no apparent conflict.

Plaintiffs' counsel is experienced in employment litigation and has provided

documentation of the efforts taken on behalf of the members of the class to resolve this litigation. This included extensive discovery, interviews with the settlement class members, investigation into the applicable law, and mediation. The parties have discussed settlement and Plaintiffs' counsel has been diligent in addressing the concerns raised by the Court in the three prior motions for preliminary approval of the settlement agreement. Additionally, the class representatives have participated in discovery and the mediation that occurred in this action. At this stage of the litigation, the Court finds that Plaintiffs are adequate representatives for the class.

5. Rule 23(b)

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry is similar to Rule 23(a)'s commonality requirement, but is more demanding. Ogbuehi, 2014 WL 4961109 at *5.

**a. Predominance**

"The notion that the adjudication of common issues will help achieve judicial economy is an integral part of the predominance test." In re Wells Fargo Home Mortgage Overtime Pay Litig. ("In re Wells Fargo"), 571 F.3d 953, 958 (9th Cir. 2009) (internal punctuation and citations omitted). The predominance inquiry "focuses on the relationship between the common and individual issues" to determine if "there is clear justification for handing the dispute on a representative rather than on an individual basis" without considering the benefits of the settlement. Hanlon, 150 F.3d at 1022.

Plaintiffs argue that the central issues of inquiry focus on issues that are common to all of the class members so that there is a predominance of commons issues to be addressed in this action. Most hourly employees are subject to the collective bargaining agreement that establishes their hours of work, meal and rest periods and other common terms and conditions of employment. Plaintiff has demonstrated that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022. The claims in this action turn on whether Defendant had policies or practices that caused Plaintiffs to be undercompensated for the

time worked and for payroll checks to be provided untimely after an employee was laid off. While there are individual issues regarding the damages to which each employee is entitled, this will not defeat certification. Ogbuehi, 303 F.R.D. at 347. Accordingly, the Court finds that the predominance requirement has been met.

**b. Superiority**

Rule 23(b)(3) also provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. Amchem, 521 U.S. at 620.

Plaintiffs argue that this action involves multiple claims for relatively small amounts which support the finding that a class action is the superior manner in which to litigate the claims. Additionally, Plaintiffs are aware of no competing litigation and any member who wishes to pursue a separate action will be able to opt out of the settlement.

Based on the terms of the settlement, the amount at issue for each individual class member will be a relatively small amount. If individual class members were to bring separate actions, each of the claims would be similar in nature and would tax both individual and judicial resources. It appears to be unlikely that any individual class member would desire to individually control the prosecution of a separate action given the litigation costs for such a small recovery. In light of these considerations, the Court finds that a class action is the superior method of litigating these employment related claims.

Based on the foregoing, Plaintiffs have met the Rule 23 requirements to certify both subclasses.

## III.

## PROPOSED SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The

role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013). The class representatives have an incentive to advance their own interests over that of the class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiffs regarding settlement. Stanton v. Boeing Co., 327 F.3d 938, 959-60 (9th Cir. 2003). Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

The Court has reviewed the proposed settlement's terms and the moving papers and finds that the settlement is "within the range of possible approval." Ogbuehi, 303 F.R.D. at 350 (citations omitted). The parties have engaged in discovery which allowed counsel to form an educated assessment of the class claims, the validity of defendant's defenses, and the value of the case. (Decl. of Dennis P. Wilson ¶ 5, ECF No. 71-3.) The parties have participated in mediation with an experienced mediator which resulted in the classwide settlement of the action. (Id. at ¶ 7.) "Participation in mediation tends to support the conclusion that the settlement process was not collusive." Ogbuehi, 303 F.R.D. at 350 (internal punctuation and citation omitted).

Plaintiffs' counsel asserts that based upon his extensive litigation experience this is a very reasonable recovery in this action. (ECF No. 71-3 at ¶ 9.) Defendant contests liability and, if this action cannot be settled, will vigorously defend the claims which would result in further delay for the class and the possibility of losing the action on the merits. (Id.) Settling the action pursuant to the proposed settlement agreement will result in a prompt and certain recovery to the class. At this stage of the litigation, Plaintiffs' representations are sufficient to grant preliminary approval.

The Court shall address those areas of concern raised in the December 24, 2015 order denying preliminary approval of the settlement agreement.

/ / /

**A. Claims Submission**

Judge Ishii expressed concern regarding the requirement that class member submit a W-4 form and the claims process. (ECF No. 67 at 2.) The parties have agreed that all potential class members that are mailed a claims form that is not returned as undeliverable will participate in the class settlement. Only those potential class members who do not receive notice because the claims administrator is unable to obtain a current address will be required to submit a claim form. The class members are not required to submit a W-4 form to the claims administrator. The current agreement has resolved those issues regarding the claims submission process.

**B. Appointment of Class Counsel and Attorney Fees**

In light of counsel's experience in wage and hour actions, the Court shall appoint Dennis Wilson as class counsel.

Counsel has revised the attorney fee request from 28 percent to 25 percent of the gross settlement fund. In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011). The usual range for common fund attorney fees are between 20-30%. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

The fee request is reasonable in light of the complexity of this action and amount of time that the action has been litigation.

**C. Class Representative Appointment and Enhancement Payment**

The Court shall designate Plaintiffs Luis Valdez and Carolina Martinez as representatives for settlement class A and Plaintiff Carolina Martinez as representative for settlement class B in this action.

The named Plaintiffs are seeking $5,000.00 as an enhancement payment in this action. The Court continues to have concerns with the $5,000.00 payment to the class representatives. This may be excessive in relation to the amount that the unnamed class members will be receiving and the effort that was expended by Plaintiffs in this action. At the fairness hearing, Plaintiffs shall be required to provide evidence of their actual involvement in litigating this action

and the range of recovery to the participating class members. Based on the evidence submitted, the Court will determine the amount of the enhancement payment to the named plaintiffs.

**D. Cy Pres Beneficiary**

In the prior orders addressing the proposed settlement, the Court has expressed concern regarding the possible reversion of 75 percent of the net settlement fund to the defendant. In the current proposed settlement the parties have agreed that any unclaimed funds will be donated to Firebaugh-Las Deltas Unified School District.

Since most class action settlements result in unclaimed funds a plan is required for distributing the unclaimed funds. Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990). The alternatives available are cy pres distribution, escheat to the government, and reversion to the defendants. Six Mexican Workers, 904 F.2d at 1307.

"Cy pres" distribution allows the distribution of unclaimed funds to indirectly benefit the entire class. Id. at 1305. This requires the cy pres award to qualify as "the next best distribution" to giving the funds directly to the class members. Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). "Not just any worthy charity will qualify as an appropriate cy pres beneficiary[,]" there must be "a driving nexus between the plaintiff class and the cy pres beneficiary." Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir. 2011)). "A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." Dennis, 697 F.3d at 865 (internal punctuation and citations omitted).

In Six American Workers, a class of undocumented Mexican farm workers sued the members of a cooperative for violations of the Farm Labor Contractor Registration Act. 904 F.2d at 1303. A bench trial was conducted and the district court found the defendants liable for over $1.8 million, which was later reduced to $850,000, in statutory damages. Id. at 1303–04, 1310. The district court designated an organization that provided humanitarian aid in Mexico as the cy pres recipient of any unclaimed funds as the organization operated in the area where many of the plaintiffs were thought to reside. Id. at 1304. The Ninth Circuit held that, even though the money would go to areas where the class members may live, the cy pres distribution was an abuse of

discretion because there was "no reasonable certainty" that any class member would benefit from it. Id. at 1308.

The Ninth Circuit considered the choice of charity and its relation to the class members and class claims, or lack thereof, in their analysis and found that the proposal benefited a group far too remote from the plaintiff class. Id. at 1308. The statute's purpose was to compensate employees for the actions of the employer and to deter future violations, but the cy pres beneficiary selected did not have a substantial record of service nor was it limited in its choice of projects and therefore the distribution "should be supervised by the court or a court appointed special master to ensure that the funds [were] distributed in accordance with the goals of the remedy." Id. at 1309. Since the application of the cy pres doctrine was inadequate to serve the goals of the statute and protect the interests of the silent class members, the Ninth Circuit reversed the cy pres distribution. Id. at 1312.

Similar to Six American Workers the purpose of all the statutes at issue here are to compensate employees for the actions of the employer and to deter future violations. See Smith v. Superior Court, 39 Cal. 4th 77, 92 (2006) ("The plain purpose of sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge."); Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1036-37 (2012) (duty imposed by enacting section 512 was to ensure that employees receive an uninterrupted thirty minute meal break); Kenny v. Supercuts, Inc., 252 F.R.D. 641, 642 (N.D. Cal. 2008) (Labor Code section 226.7 requires employer to pay one additional hour of pay at the employee's regular rate of compensation for each day that a meal or rest period is not provided); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 383 (2014) cert. denied, 135 S. Ct. 1155 (2015) ("the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the Labor and Workforce Development Agency by empowering employees to enforce the Labor Code as representatives of the Agency").

During the April 6, 2016 hearing the Court addressed the concern regarding the lack of a driving nexus between the violations alleged and the choice of Firebaugh-Las Deltas Unified School District as the cy pres beneficiary. The purpose of the statutes at issue here are to ensure that employees receive the pay and breaks they are entitled to receive. While some of the class

members may live in the Firebaugh-Las Deltas Unified School District, and may have children that attend the school district, there is no reasonable certainty that any class member would benefit from the distribution of funds to the school district. Therefore, the Court would be required to monitor the distribution to ensure that that funds benefited the purpose of the statute and the silent class members. Six American Workers, 904 F.2d at 1308. When requesting final approval of the class action settlement the parties will need to establish the appropriateness of the cy press beneficiary.

In requesting final approval of the class action settlement, the parties shall address the cy pres beneficiary and establish that there is a driving nexus to the alleged violations and that the chosen beneficiary would adequately represent the interests of the silent class members.

**E. Final Approval Hearing Schedule**

The Court shall adopt the following schedule.

| | |
|---|---|
| Last day for Defendants to provide to settlement administrator a database of all class members | Within 20 days after entry of Court's order granting preliminary approval of settlement |
| Last day for settlement administrator to mail notices to class members | Within 20 days after settlement administrator's receipt of database |
| Last day for class members to submit claim forms, request for exclusion forms, or objections | Within 60 days after mailing of class notice |
| Last day for settlement administrator to provide to Defendants' counsel and class counsel a declaration of proof of mailing | No later than 15 days prior to the final approval hearing |
| Last day for filing and service of moving papers in support of final settlement approval and request for attorneys' fees and costs | At least 14 days before the final approval hearing |
| Last day for class counsel to provide the Court with a declaration by the settlement administrator specifying the due diligence undertaken with regard to the mailing of the notice | Final approval hearing |
| Last day for Defendants to make payment to settlement administrator for individual settlements, court-approved attorney's fees and costs, service payments to Plaintiffs, LWDA | 60 days after entry of court order granting final settlement approval, unless Defendants request and class counsel agrees to additional time, which agreement will not be unreasonably |

| | |
|---|---|
| payment and settlement administrator's fees | withheld |
| Last day for settlement administrator to mail payments to individual class members | No later than 30 calendar days after receipt of the funds from Defendants |

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Preliminary approval of the class action settlement is GRANTED;

2. Conditional certification of two classes is GRANTED as follows:

a. Settlement class A as any and all persons who were employed by Neil Jones in an hourly union-represented position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through May 10, 2014. Settlement class A includes all current and former employees at the Toma-Tek facility who, at any time and for any duration during the class period, held an hourly position that is or was subject to the terms of a collective bargaining agreement between Neil Jones and Teamsters District Council No. 2 Local 388M, even if that current or former also held a position during the class period that was not covered by the collective bargaining agreement. Settlement class A also includes all hourly employees whose employment ended during a probationary period as defined by the terms of the collective bargaining agreement (the first 45 days of employment in a position covered by the collective bargaining agreement).

b. Settlement class B as any and all persons who were employed by Neil Jones in an hourly union-represented position or hourly non-union position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through December 31, 2014, but excluding anyone whose employment never ended during the class period by reason of a layoff. "Layoff" for this purpose means any period during which the class member was instructed not to return to work either permanently or until recalled in the future by reason of the end of the

processing season or the scheduling of work during periods other than the tomato processing season.

3. Named Plaintiffs Luis Valdez and Carolina Martinez are designated as representatives for settlement class A and Plaintiff Carolina Martinez be designated as representative for settlement class B;

4. Dennis P. Wilson, Wilson Trial Group, 3210 E. Shields Avenue, Suite 3, Fresno, California 93726 is appointed as class counsel for the settlement class;

5. CPT Group is appointed as settlement administrator;

6. Approval of the notice of the settlement to the class members is GRANTED; and

7. A final approval hearing is set before the undersigned on August 10, 2016, at 10:00 a.m. in Courtroom 9.

IT IS SO ORDERED.

Dated: **April 8, 2016**

UNITED STATES MAGISTRATE JUDGE