1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALDEZ, et al., | Case No. 1:13-cv-00519-SAB |
| Plaintiffs, | ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARDING ATTORNEY FEES AND INCENTIVE AWARDS; AND ENTERING JUDGMENT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT NEIL JONES FOOD COMPANY |
| v. | |
| THE NEIL JONES FOOD COMPANY, et al., | |
| Defendants. | (ECF Nos. 79-82, 86-87) |

On July 27, 2016, Plaintiffs Luis Valdez and Carolina Martinez, on behalf of themselves and others similarly situated (hereinafter collectively referred to as "Plaintiffs"), filed a motion for final approval of a class action settlement and motion for attorney fees. (ECF Nos. 79-83.) Plaintiffs' motions are unopposed.

A final fairness hearing was held on August 10, 2016. Dennis Wilson appeared for the class and Michael Wilbur appeared telephonically for Defendant. Having considered the moving papers, the Court's file, as well as the arguments made at the August 10, 2016 hearing, the Court shall grant the request for final approval of the class action settlement.

/ / /

/ / /

/ / /

1

**I.**

**BACKGROUND**

### A.    Allegations in the First Amended Complaint

The operative complaint in this action is the first amended complaint filed on October 21, 2013.  Plaintiffs filed the first amended complaint against Defendant Neil Jones Food Company ("Defendant Jones" or "Defendant") alleging failure to provide meal and rest breaks, failure to pay overtime, failure to pay required "reporting time", failure to pay for all hours worked, failure to pay wages due upon termination, failure to provide itemized wage statements, unfair business practices, conversion, and violation of the Private Attorneys General Act.  (ECF No. 31.)

Plaintiffs reside in Fresno County and were employed as non-exempt hourly employees by Defendant Jones.  (First Am. Compl. ¶¶ 8, 28, ECF No. 31.)  Defendant Jones operates San Benito Foods which is a product line producing a wide variety of products such as chopped and crushed tomatoes, pasta sauces, diced and stewed tomatoes, purees, pizza sauces, peeled tomatoes, and seafood cocktail sauces.  (Id. at ¶ 29.)  Defendant Jones' has canning and packing facilities in Firebaugh and Hollister, California.  (Id. at ¶¶ 9, 29.)

At the time the complaint was filed, Plaintiff Martinez was still employed by Defendant Jones and worked in the unskilled position of a hand processor or general laborer.  (Id. at ¶¶ 39, 63.)  Plaintiff Valdez was employed as a skilled mechanic who handled and worked with machinery.  (Id. at ¶¶ 39, 63.)  He was terminated on or about October 28, 2011.  (Id. at ¶ 82.)  Both Plaintiffs were laid off from the Firebaugh facility.  (Id. at ¶ 40.)

### B.    Procedural History

Plaintiffs Valdez and Martinez filed this employment action on behalf of themselves and all others similar situated in the Superior Court of the State of California for the County of Fresno on January 11, 2013, alleging violations of California law.  (Compl. 9-33,[1] ECF No. 1.) Defendant Jones removed this action to the Eastern District of California on April 9, 2013, under

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

28 U.S.C. §§ 1332, 1441, and 1446 on the basis of diversity jurisdiction.  (Notice of Removal 1-2, ECF No. 1.)

On May 9, 2013, Plaintiffs filed a motion to remand.  (ECF No. 8.)  Plaintiffs' motion to remand was denied on September 11, 2013.  (ECF No. 28.)  On October 21, 2013, Plaintiffs filed the first amended complaint.  (ECF No. 31.)  Defendant Jones filed an answer to the complaint on November 27, 2013.  (ECF No. 37.)

On May 7, 2014, Plaintiffs filed a notice of class action settlement.  (ECF No. 40.) Plaintiffs filed a notice of joint motion for preliminary approval of the class action settlement on June 23, 2014.  (ECF No. 42.)  On June 24, 2014, the parties filed a joint motion for preliminary approval of the class action settlement.  (ECF No. 44.)  A hearing on the motion was held on July 30, 2014 and an order issued on August 12, 2014, denying the motion for preliminary approval of the class action settlement finding that Plaintiffs had not met the requirements for class certification and that the structure of the settlement agreement raised concerns about the fairness of the agreement to the unnamed class members.  The Court cited several areas of concern: 1) the notice provisions were inadequate to comply with due process and inform the unnamed class members of the rights that are being extinguished due to the settlement; 2) the agreement may have provide preferential treatment to some class members; 3) class counsel attorney fees raised at least an inference that the settlement may improperly favor counsel; 4) the agreement may result in over seventy-five percent of the net settlement fund reverting to Defendant; and 5) the incentive payments to the named Plaintiffs far exceeded the recovery of the individual class members.  (ECF No. 47.)

On December 23, 2014, Plaintiffs filed a second motion for preliminary approval of a class action settlement.  (AR 48.)  A hearing on the motion was held on January 21, 2015, and findings and recommendations issued recommending that preliminary approval of the class action settlement be denied as Plaintiffs had not demonstrated that the requirements of Rule 23(b) had been met; and the Court found the settlement was not fair, adequate, and reasonable.  (ECF No. 51.)  The parties filed objections to the findings and recommendations on February 9, 2015.

(ECF Nos. 52, 53.)  On March 27, 2015, the district judge issued an order adopting the findings and recommendations and denying the motion for preliminary approval of the settlement.  (ECF No. 54.)

On October 9, 2015, Plaintiffs filed a third motion for preliminary approval of the class action settlement.  (ECF Nos. 58-60.)  On October 27, 2015, Defendant filed a declaration in support of the motion for approval of the class action settlement.  On November 2, 2015, findings and recommendations issued recommending that preliminary approval of the class action settlement be granted, however concerns were raised regarding the enhancement payment to the class representatives, the attorney fees sought by class counsel, and the reversion to Defendant. (ECF No. 63.)  On December 3, 2015, the district judge ordered additional briefing to address three areas of concern: the reversion, the claims process, and the attorney fee request.  (ECF No. 64.)  On December 17, 2015, the parties each filed briefing in support of the preliminary settlement agreement.  (ECF Nos. 65, 66.)  On December 24, 2015, the district court issued an order denying preliminary approval of the class action settlement.  (ECF No. 67.)

On February 19, 2016, Plaintiff filed a fourth motion for preliminary approval of the class action settlement.  (ECF No. 70.)  The parties consented to the jurisdiction of the magistrate judge for all purposes and this action was reassigned to the undersigned on April 8, 2016.  (ECF Nos. 73, 74, 75.)  On this same date, an order issued granting Plaintiffs' motion for preliminary approval of the class action settlement.  (ECF No. 79.)  The Court noted that at final approval the plaintiffs would need to provide evidence to support their request for an enhancement payment and expressed concern about the appropriateness of the cypress beneficiary which would need to be addressed in the motion for final approval of the class action settlement.  (Id.)

On July 27, 2016, Plaintiff filed a motion for final approval of the class action settlement and a motion for attorney fees.  (ECF Nos. 79-82, 83.)  At the direction of the Court, supplemental briefing was filed on August 5, 2016.  (ECF Nos. 86, 87.)  No objections to the settlement or opposition to the motion for final approval of the class action settlement have been filed.

### C.    Terms of the Proposed Settlement Agreement

Two classes have sought certification in this action.  Subclass A is composed of any and all persons who were employed by Neil Jones in an hourly union-represented position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through May 10, 2014.  (ECF No. 71-3 at 14.)  Subclass B is composed of all any and all persons who were employed by Neil Jones in an hourly union-represented position or hourly non-union position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through December 31, 2014, but excluding anyone whose employment never ended during the class period by reason of a layoff.  (Id.)

Under the terms of the proposed settlement, Defendant agrees to pay $850,000.00 in cash ("gross settlement amount") to resolve the claims of any class members who do not timely and validly opt out.  (Id. at 22.)  Of the gross settlement amount, $650,000.00 is allocated to the released claims of settlement class A and $200,000.00 is allocated to the released claims of settlement Class B.  (Id.)  The following deductions are to be taken from the gross settlement amount:

- Up to $5,000.00 each to Plaintiffs Martinez and Valdez for their services and participation as class representatives;
- Up to $212,500.00 (25 percent of the gross settlement fund) to class counsel for attorney fees;
- Up to $30,000.00 in legal costs and expenses;
- $40,215.64 in claims administrator costs;
- $15,000.00 for civil penalties under the California Private Attorney General Act; and
- Defendant's portion of FICA, FUTA, and all other state and federal payroll taxes on the individual settlement payments.

(Id. at 18, 25-27.)

The individual settlement payments to each class member in subclass A will be based on their "workweek equivalents" during the class period.  (Id. at 22.)  Each class member's "workweek equivalents" will be calculated by dividing the class member's total straight time

5

work hours during the class period by forty hours for the class period of January 11, 2009 through May 10, 2014.  (Id. at 23.)  Each class member will be entitled to a proportionate share of the net settlement amount that is the same as that class member's proportionate share of the total workweek equivalents for the entire class.  (Id.)

The individual settlement payments to each class member in subclass B will be calculated using a formula based on the number of years during the class period that the employee was laid off.  (Id. at 23.)  Each employee in settlement class B will receive a payment of $50 if laid off for one year during the class period; $75 if laid off for two years during the class period; $100 if laid off for three years during the class period; $125 if laid off for four years during the class period; $150 if laid off for five years during the class period; or $175 if laid off for six years during the class period.  (Id.)

Notices in English and Spanish were mailed to all class members at the last known address provided by Defendant Jones.  (Id. at 18.)  The settlement administrator was to resend notices returned by the United States Postal Service with a forwarding address.  (Id. at 19.)  If no forwarding address was provided, the claims administrator was to skip trace the individual names to obtain additional addresses and mail a second notice to any new or different address obtained. (Id.)

The settlement provides that if the net settlement amount exceeds the sum of the individual payments, twenty-five percent of the difference will be allocated to the class members and seventy-five percent of the difference will be donated to the Firebaugh-Las Deltas Unified School District.  (Id. at 22.)  All funds from individual settlement payment checks that are uncashed 90 days after they are mailed by the settlement administrator shall be donated to Firebaugh-Las Deltas Unified School District.  (Id. at 25.)

The class A settlement resolves claims from January 11, 2009 through the preliminary approval date based on (1) Defendant's alleged failure to provide meal periods or failure to comply with any provision of California law relating to the provision of meal periods; (2) Defendant's alleged failure to provide rest breaks or failure to comply with any provision of

California law relating to the provision of rest breaks; (3) Defendant's alleged failure to pay regular wages or overtime premiums for all hours worked as a result of its practices of rounding employees' clock times, requiring employees to submit to bag checks and other security checks, and the donning and doffing of protective clothing and equipment, as well as the time spent by employees walking between their work area and the employee parking lot at the beginning and end of each shift and the time spent by employees waiting to pick up paychecks; and (4) Defendant's alleged failure to provide itemized wage statements in compliance with Labor Code section 226, as well as claims for violations of California Business and Professions Code section 17200, conversion and for penalties under the Private Attorney General Act arising out of the claims.  (Id. at 12.)  The class B settlement resolves claims arising out of Defendant's alleged failure at any time from January 11, 2009 through December 31, 2014 to pay any member of the class all wages due within the appropriate time after layoff in violation of Labor Code section 201, 202, or 203, and any claims during the same period for alleged violation of Labor Code section 226 based on or arising out of the itemized wage statements that Neil Jones provided to laid off employees.  (Id. at 12-13.)  To achieve a full and complete release, each class member releases all released claims, either known or unknown, that exist at the time the Court enters a final order approving the settlement.  (Id. at 30.)  Plaintiffs and the class will seek dismissal of all claims against Defendant and will provide Defendant with a full release of the settled claims.  (Id. at 30.)  The class members will release all claims asserted in this action with prejudice.  (Id.)

## II.

## LEGAL STANDARDS FOR APPROVAL OF CLASS SETTLEMENTS

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members.  In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action

7

settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." In re Bluetooth, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting In re Bluetooth, 654 F.3d at 946).

Review of the proposed settlement of the parties proceeds in two phases. True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. True, 749 F.Supp.2d at 1063. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

### III.

### DISCUSSION

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013). (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). This more exacting review of class settlements

reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

A.      **Final Certification of Class**

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471 (E.D. Cal. 2009).

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation. (Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement 9-12, ECF No. 76.) Further, the Court found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these employment related claims. (Id. at 12-13.)

No class member has objected to the settlement of this action and the Court is unaware of any changes that would affect the class certification findings. For the reasons set forth in the April 8, 2016 order on Plaintiffs' motion for preliminary approval of the class action settlement, the Court finds that the settlement classes continues to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b). (ECF No. 76.)

Rule 23(c) provides that a class certified under Rule 23(b)(3) must be provided with the best notice that is practicable in the circumstances. Fed. R. Civ. P. 23(c)(2)(B). In this instance, the approved notice was mailed to the last known addresses of all class members after updating all addresses by conducting a National Change of Address search. (Decl. of Ani Shirinian ¶¶ 5, 6, 7, ECF No. 82.) Twenty-two notice packets were returned by the Post Office which did not contain a forwarding address. (Id. at ¶ 8.) A Skip Trace was performed and fourteen notice

packets were re-mailed to due to the Skip Trace search or at the request of the class member.  (Id. at ¶ 9.)  Fifteen packets were unable to be delivered due to the failure to obtain a current address. (Id. at ¶ 15.)  The Court finds that the notice was sufficient to comply with Rule 23(c).

Having found the Rule 23 requirements have been met, the Court will grant final class certification.  The following classes are certified for settlement in this matter:

Settlement class A as any and all persons who were employed by Neil Jones in an hourly union-represented position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through May 10, 2014.  Settlement class A includes all current and former employees at the Toma-Tek facility who, at any time and for any duration during the class period, held an hourly position that is or was subject to the terms of a collective bargaining agreement between Neil Jones and Teamsters District Council No. 2 Local 388M, even if that current or former also held a position during the class period that was not covered by the collective bargaining agreement.  Settlement class A also includes all hourly employees whose employment ended during a probationary period as defined by the terms of the collective bargaining agreement (the first 45 days of employment in a position covered by the collective bargaining agreement).

Settlement class B as any and all persons who were employed by Neil Jones in an hourly union-represented position or hourly non-union position at Neil Jones' "Toma-Tek" facility located in Firebaugh, California at any time from January 11, 2009 through December 31, 2014, but excluding anyone whose employment never ended during the class period by reason of a layoff. "Layoff" for this purpose means any period during which the class member was instructed not to return to work either permanently or until recalled in the future by reason of the end of the processing season or the scheduling of work during periods other than the tomato processing season.

### B.      Final Approval of the Class Action Settlement

Having determined that the action is suitable as a class action, the Court next addresses Federal Rule of Civil Procedure 23(e)(2)'s requirement that any settlement in a class action be

approved by the court which must find that the settlement is fair, reasonable, and adequate.  The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole.  Lane, 696 F.3d at 818-19.  The class representatives have an incentive to advance their own interests over that of the class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiffs regarding settlement.  Stanton v. Boeing Co., 327 F.3d 938, 959-60 (9th Cir. 2003).  Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  Hanlon, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

The court considers a number of factors in making the fairness determination including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).  All of these factors will not apply to every class action settlement and one factor alone may prove sufficient grounds for court approval.  Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. (DIRECTV), 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  Officers for Justice, 688 F.2d at 625.

1.    The Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender

3d. ed.)).  The court's role is not to reach any ultimate conclusion on the facts or law which underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements.  <u>Officers for Justice</u>, 688 F.2d at 625.  In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value."  <u>Bellinghausen v. Tractor Supply Co.</u>, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 965 (9th Cir.2009)).

Plaintiffs' first amended complaint alleges claims for failure to provide meal and rest periods; failure to pay overtime; failure to compensate employees required to show up for work; failure to pay for all hours worked; failure to pay wages at time of termination and to provide accurate wage statements; unfair business practices; conversion; and violation of the Public Attorney General Act ("PAGA").  (ECF No. 31.)  While Plaintiffs have gathered evidence to support their claims that Defendant serially denied uninterrupted rest and meal breaks, caused work off the clock, and did not pay overtime pay; Defendant has strong evidence related to commonality of the various categories of work duties and conflicting evidence that may have enabled them to overcome class certification.  ((Decl. of Dennis P. Wilson ¶ 16, ECF No. 81.)

As the Court has previously addressed in prior motions for preliminary approval of the class action settlement, during discovery the named class representatives proffered testimony that conflicts with the claims asserted in this action.  Deposition testimony supported only a relatively nominal meal period claim as Defendant Martinez did not work part-time and her testimony was that there were only a limited number of days in which she was instructed to take a twenty minute lunch period.  Plaintiff Valdez testified that he was always provided with a thirty minute meal period but on occasion did not take the full thirty minutes.  Both named Plaintiffs testified that they were permitted to take rest breaks and were paid overtime when they worked more than eight hours a day or more than than forty hours per week.  (ECF No. 44-1 at 14.)  These issues will adversely affect the classes' ability to prove liability on a class wide basis for the claims

asserted in the action.

Given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with a fair resolution of the issues presented which weighs in favor of settlement.

2.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." DIRECTV, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.2002)).   Absent settlement this action will proceed to a contested motion for class certification which would result in further litigation expense and delay.   Proceeding to conduct merits discovery and potential dispositive motions on the merits of the claims if a class is certified would cause the parties to this action to incur additional expenses that will be avoided by the settlement.   Discovery and trial in this matter is also complex due to the fact that this is a class action.   Issues with how to present the case to the trier of fact and prove damages on a class wide basis can be expensive and complicated.   Plaintiff opines that the parties would each be expected to incur costs of at least $3million if this action were to proceed to trial.

If this action were to proceed to trial, the class would be subjected to the risk of receiving nominal recovery or being denied any recovery in this action.   Resolving the action at this time saves the parties the expense of conducting further litigation and confers substantial benefit to the class without being subjected to the risks inherent with proceeding to trial of the matter.

The risks inherent in continuing to litigate this action, the additional expenses that would be incurred were this action to proceed, and the complexity of this action weigh in favor of settlement.

3.      The Amount Offered in Settlement

Defendant has agreed to establish a settlement fund of $850,000.00 in this matter.   The amount offered to settle this action is within the range of reasonableness.   This action involves 2,832 class members. Each class member in subclass A will receive a proportional amount based upon the number of workweek equivalents worked.   Subclass A has 2,509 class members.   There

13

is $424,136.11 available to the class and the average subclass A payment is $169.05.  (ECF No. 87 at ¶¶ 3, 4.)  The amount of funds available to subclass A exceeded what was necessary to pay all claims so the excess funds were reallocated to subclass B.  (Id. at ¶ 4.)

Each class member of subclass B will receive a payment based upon the number of years that the employee was laid off.  Based upon the settlement agreement, with the agreed to reductions and the addition of the excess funds from subclass A, the net settlement fund available to subclass B class members is $136,697.74.  (ECF No. 87 at ¶ 5.)  There are 2,293 members of subclass B.  (Id. at ¶ 3.)  The funds designated to this subclass are not sufficient to make the payments as set forth in the settlement agreement, so each payment was reduced by 34.88 percent.  (Id. at ¶ 6.)  Due to this reduction the class awards have been reduced as follows:

| Years Laid Off | Original Award | Reduced Award |
|----------------|----------------|---------------|
| 1 | $50.00 | $31.06 |
| 2 | $75.00 | $46.59 |
| 3 | $100.00 | $62.12 |
| 4 | $125.00 | $77.65 |
| 5 | $150.00 | $93.17 |
| 6 | $175.00 | $108.77 |

Id. at ¶ 6.

The net settlement funds available to both classes is $560,833.85 and 100 % of the total funds will be distributed to the classes.  (Id.)  The Court finds that the amount offered in settlement of this action weighs in favor of approving the settlement.

4.      The Stage of the Proceedings

While a settlement that occurs in an advanced stage of the proceedings indicates that the parties have carefully investigated the claims before resolving the action, Ontiveros v. Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014), the settlement in this action occurred approximately six months after discovery commenced in this action.  (ECF Nos. 39, 40.)  In considering the fairness

of the settlement, the court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." <u>Ontiveros</u>, 303 F.R.D. at 371

Although this action settled relatively early, the parties engaged in extensive discovery which included the exchange of documents and in-person interviews with the putative class members. (ECF No. 81 at ¶¶ 4-5, 13.)  The parties prepared mediation statements and also engaged in mediation with a mediator experienced in employment law which resulted in the settlement of the action. (<u>Id.</u> at ¶ 6, 14.)  The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.

5.    <u>The Experience and Views of Counsel</u>

The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation. <u>DIRECTV</u>, 221 F.R.D. at 528. Class counsel is experienced in class action litigation and has opined that the the settlement agreement in this action is fair, reasonable and adequate to the members of the class.  This weighs in favor of approving the class action settlement.

6.    <u>The Reaction of the Class Members to the Proposed Settlement</u>

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>DIRECTV</u>, 221 F.R.D. at 529.  The classes here consist of 2,832 members. (ECF No. 82 at ¶ 15.)  Eleven class members have submitted exclusion requests and no class members have objected to the settlement in this action. (<u>Id.</u> at ¶¶ 13, 15.)  The absence of any objections is compelling evidence that the settlement is fair, adequate and reasonable. <u>DIRECTV</u>, 221 F.R.D. at 529.  The low number of class members to opt out of the class and the absence of objections by class members weighs in favor of settlement.

7.    <u>Risk of Collusion</u>

Where a class action is settled prior to class certification, the Court must also consider

whether there is evidence of collusion or other conflicts of interest before approving the settlement.  In re Bluetooth, 654 F.3d at 946.  The Ninth Circuit has provided examples of signs that a settlement is the product of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  In re Bluetooth, 654 F.3d at 947.

Here, over $500,000 is being distributed to the two classes and class counsel is seeking 25 percent of the gross fund which is the benchmark in this circuit.  The award of attorney fees is not separate and apart from the class fund, however Defendants have agreed not to object to the requested attorney fees and costs.  Finally, the unclaimed funds are being distributed to a cy pres beneficiary and do not revert to defendant.  The Court finds that balancing these factors does not suggest a collusive settlement agreement.

8.     Unclaimed Funds

Since most class action settlements result in unclaimed funds a plan is required for distributing the unclaimed funds.  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990).  The alternatives available are cy pres distribution, escheat to the government, and reversion to the defendants.  Six Mexican Workers, 904 F.2d at 1307.  The parties have designated Firebaugh-Las Deltas Unified School District.  In the April 8, 2016 order granting preliminary approval of the class action settlement, the Court expressed concern regarding the appropriateness of the designated cy pres beneficiary.

Cy pres distribution allows the distribution of unclaimed funds to indirectly benefit the entire class.  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990).  This requires the cy pres award to qualify as "the next best distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate cy pres beneficiary[,]" there must be

"a driving nexus between the plaintiff class and the cy pres beneficiary." Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir. 2011)). "A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." Dennis, 697 F.3d at 865 (internal punctuation and citations omitted).

The purpose of the statutes at issue here are to compensate employees for the actions of the employer and to deter future violations. See Smith v. Superior Court, 39 Cal.4th 77, 92 (2006) ("The plain purpose of sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge."); Brinker Rest. Corp. v. Superior Court, 53 Cal.4th 1004, 1036-37 (2012) (duty imposed by enacting section 512 was to ensure that employees receive an uninterrupted thirty minute meal break); Kenny v. Supercuts, Inc., 252 F.R.D. 641, 642 (N.D. Cal. 2008) (Labor Code section 226.7 requires employer to pay one additional hour of pay at the employee's regular rate of compensation for each day that a meal or rest period is not provided); Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal.4th 348, 383 (2014) cert. denied, 135 S. Ct. 1155 (2015) ("the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the Labor and Workforce Development Agency by empowering employees to enforce the Labor Code as representatives of the Agency").

The Court previously found that:

> The purpose of the statutes at issue here are to ensure that employees receive the pay and breaks they are entitled to receive. While some of the class members may live in the Firebaugh-Las Deltas Unified School District, and may have children that attend the school district, there is no reasonable certainty that any class member would benefit from the distribution of funds to the school district. Therefore, the Court would be required to monitor the distribution to ensure that that funds benefited the purpose of the statute and the silent class members. Six American Workers, 904 F.2d at 1308. When requesting final approval of the class action settlement the parties will need to establish the appropriateness of the cy pres beneficiary.

(ECF No. 76 at 17:24-18:7.) The parties did not address the cy pres beneficiary in their motion for final approval of the class action settlement. The Court requested further briefing on the issue and the parties asserted that they have agreed that all unclaimed funds be reallocated to subclass B in lieu of distribution to a cy pres beneficiary.

17

During the hearing, the Court raised the issue of distribution of any unclaimed settlement funds.  The settlement agreement provides that any funds resulting from individual settlement payment checks that are not cashed within 90 days will be donated to Firebaugh-Las Deltas Unified School District.  (ECF No. 71-3 at 25.)  Additionally, there are funds unclaimed due to the reduction in the class representatives incentive payment requests as discussed below.  Plaintiff asserts that all these funds will be allocated to and distributed to subclass B.

Accordingly, any funds due to the reduction in the class representatives' incentive payments shall be included in the initial distribution for subclass B.  The class administrator shall make a second distribution to subclass B to distribute any funds that are unclaimed due to a class member failing to cash an individual settlement payment check within 90 days.  If the unclaimed funds are de minimis or would over compensate subclass B, the parties may move for an alternate method of distribution.

9.    Conclusion

After considering the foregoing factors, the Court finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).  Further, the Court finds no evidence that the settlement is the result of any collusion between the parties.  In re Bluetooth, 654 F.3d at 946–47.

**B.    Motion for Attorney Fees**

Class counsel seeks attorney fees of $212,500.00 which is 25% of the gross settlement fund.  There is no dispute that the plaintiff is entitled to reasonable attorney fees in this action as the prevailing party.  However, "[i]n a class action, the district court 'must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.' " Parkinson v. Hyundai Motor America, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) (quoting Zucker v. Occidental Petrol. Corp., 192 F.3d 1323, 1328–29 (9th Cir.1999)).

1.    Percentage of Common Fund Award

Federal Rule 23(h) provides that "[i]n a certified class action, the court may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Ninth Circuit has affirmed the use of two separate methods of calculating attorney fees,

depending upon the case. Hanlon, 150 F.3d at 1029. "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or 'lodestar method.' " Id.

The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature and therefore monetary benefit is not easily calculated. In re Bluetooth, 654 F.3d at 941. The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Since the benefit to the class is easily calculated in a common find case, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request. In re Bluetooth, 654 F.3d at 942. In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure. Id. The usual range for common fund attorney fees are between 20-30%. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002; Bellinghausen, 306 F.R.D. at 260. When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request. See Vizcaino, 290 F.3d at 1050. "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (quoting In re Bluetooth, 654 F.3d at 942).

The settlement in this action has resulted in a common fund of $850,000.00. The attorney fees requested, $212,500.00, are 25% of the gross settlement fund. Plaintiffs argue that class counsel is experienced and skilled in invested substantial amounts of time and energy on behalf of the class to achieve the settlement in this action. The amount involved and the results obtained

are relevant to the reasonableness of the fee award.  Hensley v. Eckerhart, 461 U.S. 424, 430 (1983).  In this action, the parties reached settlement shortly after commencing discovery and prior to class certification.  Counsel's efforts on behalf of the class resulted in a settlement fund of $850,000.00.  This will provide an average award to subclass A of $169.05.  Subclass B members will receive between $31.06 and $108.77.  The Court concludes that the results received supports the reasonableness of the 25 percent benchmark.

Plaintiffs also argue that the legal and factual issues presented here were complex and difficult.  Plaintiffs argue that prior to this case, many courts have held that off-the-clock cases were not suitable for class certification.  While the Court does not dispute that counsel is skilled and the issues here were complex of difficult, the Court does not find these factors substantially different from any other class action which is filed in this Court such that a deviation from the benchmark would be warranted.

Plaintiffs also argue that counsel took this action on a contingency basis assuming the risk of no recovery.  Courts recognize that above market fee award may be appropriate to encourage counsel to take contingency fee cases of plaintiffs who could otherwise not afford to pay hourly fees.  In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  This actions settled relatively early in the action, and the delay in finalizing the settlement was due to the parties delay in addressing the concerns raised by the Court in the multiple orders addressing preliminary approval of the class action settlement.  The Court finds that this factor supports the award of the 25 percent benchmark.

Having considered the relevant factors, the Court finds that the factors do not warrant a departure from the benchmark of 25 percent.  The Court finds that the benchmark of 25 percent is appropriate to compensate counsel for their efforts in this action.  Therefore, Plaintiffs' counsel should be awarded $212,500.00 to be paid from the gross settlement fund.

2.    Lodestar Cross Check for Reasonableness

The Ninth Circuit encourages Courts to employ the lodestar method as a cross check on the percentage method to ensure a failure and reasonable result.  In re Linkedin User Privacy

Litig., 309 F.R.D. 573, 591 (N.D. Cal. 2015).   Therefore, Plaintiffs were advised that in submitting the final approval of class action settlement they would be required to provide a thorough fee award petition that details the hours reasonably spent representing Plaintiffs in this action.  (ECF No. 63 at 15.)

The Ninth Circuit utilizes the "lodestar" approach for assessing reasonable attorney fees, where the number of hours reasonably expended is multiplied by a reasonable hourly rate. Gonzalez, 729 F.3d at 1202.  The Supreme Court explained that the loadstar amount is to be determined based upon the prevailing market rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  Plaintiffs use the reasonable hourly rate for Dennis Wilson of $650.00 per hour and Anthony Luti of $600.00 per hour which is based upon the applicable rates in the Los Angeles area.  (ECF No. 83 at ¶ 81.)  However, the "relevant legal community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez, 729 F.3d at 1205.  Here, the relevant legal community would be the Fresno Division of the Eastern District of California.  Plaintiffs have provided no evidence of the prevailing rates in the local economy, accordingly, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in determining a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

In the Fresno Division of the Eastern District of California, attorneys with experience of twenty or more years of experience are awarded $350.00 to $400.00 per hour.  See Torchia v. W.W. Grainger, 304 F.R.D. 256, 277 (E.D. Cal. 2014) (awarding attorney with twenty-five years of experience $380.00 per hour in wage and hour class action); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Torres v. Pet Extreme, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *11 (E.D. Cal. Jan. 15, 2015), amended, No. 1:13-CV-01778-LJO, 2015 WL 648241 (E.D. Cal. Feb. 5, 2015) (finding $400.00 per hour reasonable hourly rate for experienced counsel

in class action).  This Court recently considered an award of attorney fees in a wage and hour class action and awarded fees between $125.00 to $425.00 per hour depending upon the skill and experience of counsel.  Order Granting in Part and Denying in Part Plaintiffs' Motion for Attorney Fees 23-35, In re Taco Bell, No. 1:07-cv-01314-SAB (E.D. Cal. July 15, 2016).

Mr. Wilson has been practicing law since January of 1988 with an emphasis in the area of business and complex civil litigation.  He has tried over 200 bench trials and approximately 63 jury trials in criminal and civil cases.  Mr. Wilson has participated in prosecuting multiple class actions and belongs to several attorney organizations.  Based upon the Court's observation of Mr. Wilson's skill and his experience, the Court finds that $370.00 per hour would be a reasonable rate of compensation for his efforts in this action.

Mr. Luti has extensive experience in litigating labor and employment matters including wage and hour class actions.  Prior to representing employees, Mr. Luti represented employers in wage and hour actions.  However, Plaintiffs provide no further information regarding Mr. Luti's experience or the number of years he has been practicing.  The Court takes judicial notice that according to the State Bar of California Mr. Luti was admitted to the practice of law in California in   June   2000.   The   State   Bar   of   California,   Attorney   Search, http://members.calbar.ca.gov/fal/MemberSearch/QuickSearch?FreeText=anthony+luti&SoundsLike=false&x=49&y=5 (last visited 8/2/16).  The Court finds that based upon this limited information, a reasonable rate of compensation for Mr. Luti would be $350.00.  Therefore, the Court finds a blended rate of $360.00 hour would be reasonable compensation for the hours expended in this action.

Mr. Wilson expended approximately 350 hours and Mr. Luti expended approximately 200 hours on this action.  Plaintiffs contend that by the time this action is complete the attorneys will have spent 600 hours on this action.  Therefore, the lodestar method would result in an attorney fee award of $216,000.00 for the services provided in this action.

Accordingly, the Court finds that $212,500.00 is reasonable compensation for the time spent in litigating this action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.     Costs

Originally, Plaintiffs were seeking costs of $30,000.00 in this action.  Plaintiffs expended costs of $17,887.39 for filing and mediator fees, service of process, mail, postage and phone, travel expenses, research and copying costs, translation and deposition fees.  Upon supplemental briefing Plaintiffs have reduced their request to $15,000.00.   The Court has reviewed the expenditures set forth in Plaintiffs' supplemental briefing and finds that $15,000.00 is a reasonable amount of costs in this action.

**C.     Class Representative Enhancement Payment**

Plaintiffs Luis Valdez and Carolina Martinez have been designated as representatives for settlement class A and Plaintiff Carolina Martinez has been designated as representative for settlement class B class.   Each class representative is seeking $5,000.00 as an enhancement payment in this action.  The Court has previously indicated that the amount requested by the class representatives appears to be excessive in relation to the amount that the class members are receiving and the efforts that the class representative expended in this action.  (ECF No. 63 at 15.) Plaintiffs were advised that they would need to provide evidence of their actual involvement at final approval.  (Id.)

Incentive awards or enhancement payments "are payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe, 715 F.3d at 1163.  These awards are fairly typical in class actions.   Rodriguez, 563 F.3d at 958.   The awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez, 563 F.3d at 958–59.  Incentive awards come out of the class's recovery in instances where the class receives a monetary settlement.   Radcliffe, 715 F.3d at 1163.  While the court may approve incentive awards, the Ninth Circuit has advised district courts to carefully scrutinize the awards to ensure they do not undermine the adequacy of the class representatives.  Id at 1163.

In Stanton, the Ninth Circuit found it was an abuse of discretion to approve a settlement

where the class representatives received an incentive award that was, on average sixteen times greater than the award that the unnamed class members would receive.  Stanton, 327 F.3d at 946. The district court must evaluate the fairness of the incentive award by considering "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." Id. at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In support of the enhancement payments, Mr. Wilson submitted a declaration.  (ECF No. 81.)  The class representatives were present during 16 hours of mediation and worked post mediation and in follow-up.  (Id. at ¶¶ 10, 14.)  The class representatives brought the claim to the attention of class counsel, searched their files and produced documents relating to their employment with Defendant.  (Id. at ¶ 12.)  They gave multiple interviews regarding their experiences and reviewed documents.  (Id. ¶¶ 12, 13.)  The class representatives spent "approximately over fifty hours each" which included meeting with attorneys, keeping the attorneys informed, attending depositions, and reviewing discovery requests.  (Id. at ¶¶ 74, 75.)

The average class member in subclass A will receive $169.05.  (ECF No. 87 at ¶ 4.) Subclass B members will receive between $31.06 and $108.77.  (Id. at ¶ 6.)  The amount sought by the class representatives far exceeds the amount that any class member will receive in this action and the disparity between the incentive sought and the award received by class members is close to the discrepancy which was found to be an abuse of discretion in Stanton.  Further, an incentive award of $5,000.00 would equate to approximately $100.00 per hour for the time the class representatives spent litigating this action.[2]  Finally, at the time this action was filed Mr. Valdez was no longer employed by Defendant and therefore had no reasonable fear of workplace retaliation, nor have the parties identified any retaliatory concerns on Ms. Martinez' behalf.

The Court finds the class representative's participation in this action similar to cases in

---

[2] At the August 10, 2016 hearing, Plaintiffs' counsel stated that the time spent by the class representatives was closer to 75 hours each.  An award of $5,000.00 would equate to approximately $67.00 per hour if the representative spent 75 hours in this action.

which incentive awards in the range of $2,000.00-3,000.00 have been found appropriate to compensate the class representative for participation in a class action. See Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500.00 where action settled for $400,000.00 and each class member will receive $65.79); Wolph v. Acer America Corporation, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000.00 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action); Rigo v. Kason Industries, Inc., No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500.00 incentive award for more than two years of service well within the acceptable range); Vinh Nguyen v. Radient Pharmaceuticals Corp., No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000.00 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

Considering the factors identified in Stanton, the Court finds that an award of $3,000.00 is reasonable to compensate the named representatives for their efforts in this action.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Except as otherwise specified herein, the Court for purposes of this final approval order adopts all defined terms set forth in the settlement.

2.      The Court has jurisdiction over this action and the settlement under the jurisdictional provisions of 28 U.S.C. § 1332(a)(1).

3.      The Court finds that the notice procedure afforded adequate protections to class members and provides the basis for the Court to make an informed decision regarding approval of the settlement based on the responses of class members.  The Court finds that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process.

4.      The Court finds that the terms of the settlement are fair, reasonable and adequate to the class and to each class member and that the class members who have not opted out will be bound by the settlement, that the settlement is ordered finally approved, and that all terms and provisions of the settlement should be and hereby are ordered to be consummated.

5.      The class administrator shall make a second distribution to subclass B to distribute any funds that are unclaimed due to a class member failing to cash an individual settlement payment check within 90 days.

6.      The Court finds that the individual settlement payment to be paid to the class members as provided for by the settlement are fair and reasonable.  The Court hereby gives final approval to and orders the payment of those amounts be made to the class members out of the net settlement proceeds in accordance with the terms of the settlement agreement.

7.      The Court finds that the fees and expenses of CPT Group, Inc., in administering the settlement, in the amount of $40,215.64, are fair and reasonable.  The Court hereby gives final approval to and orders that the payment of that amount be paid out of the gross settlement amount in accordance with the settlement.

8.      Nothing in this order shall preclude any action to enforce the Parties' obligations under the settlement or under this order, including the requirement that Defendants provide funds to the settlement administrator to fund the individual settlement payments and the requirement that the settlement administrator make payments from the gross settlement amount in accordance with the settlement.

9.      Upon completion of administration of the settlement, the settlement administrator will provide written certification of such completion to the Court and counsel for the Parties.

10.      By operation of the entry of this final approval order and pursuant to the settlement, Plaintiffs are permanently barred from prosecuting against Defendants any of the Plaintiffs' released claims; participating class members are permanently barred from prosecuting against Defendants any of the Class's released claims; and Class counsel are permanently barred from prosecuting against Defendant Neil Jones food Company any of the Class counsel's released

claims.

11.     Without affecting the finality of this final approval order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this order and the settlement until the settlement funds are distributed.

12.     Class counsel is awarded attorney fees in the amount of $212,500.00 and costs of $15,000.00 to be paid from the gross settlement fund;

13.     Class representatives Luis Valdez and Carolina Martinez are each awarded an incentive award of $3,000.00 to be paid from the gross settlement fund;

14.     The Parties are hereby ordered to comply with the terms of the settlement.

15.     This action is dismissed with prejudice, each side to bear its own costs and attorneys' fees except as provided by the settlement.

16.     Judgment in this action is entered in favor of Plaintiffs and against Defendant Jones.

IT IS SO ORDERED.

Dated:   **August 10, 2016**

_____
UNITED STATES MAGISTRATE JUDGE